**STATE of Missouri, Respondent,**

**v.**

**Sam G. NEAL, Appellant.**

**Sam G. NEAL, Appellant,**

**v.**

**STATE of Missouri, Respondent.**

**Nos. WD 43803, WD 45904.**

Missouri Court of Appeals,
Western District.

March 9, 1993.

Raymond L. Legg, Office of the State Public Defender, Columbia, for appellant.

William L. Webster, Atty. Gen., Jefferson City, Philip M. Koppe, Asst. Atty. Gen., Kansas City, for respondent.

Before BRECKENRIDGE, P.J., and SHANGLER and SPINDEN, JJ.

SPINDEN, Judge.

Sam Guy Neal appeals his convictions as a prior offender of the Class C felonies of burglary in the second degree and stealing. He also appeals the court's denial of his Rule 29.15 motion for post-conviction relief.

Neal asserts several points of error. He complains that the state's evidence did not establish beyond a reasonable doubt that he participated in the burglary. He also assigns error to the court's not permitting him to question a detective about fingerprints on the stolen merchandise; the state's defining reasonable doubt and labeling him a "criminal" during closing arguments; a conflict of interest in the Buchanan County Prosecutor's Office prosecuting him; and the court's definition of reasonable doubt. We do not find merit in any of his assertions.

In his Rule 29.15 motion, Neal complains that his attorney was ineffective. We conclude that the trial court properly denied the motion.

## FACTS

Viewing the evidence in the light most favorable to the verdict, it established that on December 7, 1989, at about 9:20 P.M., three men broke through a glass door of Bob Fay's T.V. and Appliance Store in St. Joseph. Sean Reeves and his girlfriend, Camille McClain, happened by and heard a burglar alarm and saw a bright light revolving above the store's front door. They observed three men. One of them was holding the glass up in the broken door while the other two men carried boxes and video equipment out of the store and loaded them in a brown car backed up to the building.

Reeves saw one of the men pull what appeared to be a gun out of the car's trunk. Reeves said the man wore jeans and a dark colored jacket which was unbuttoned and hung open. He described the man's mouth as "kind of droop[ing] open a little bit" and his hair was "scattered out," a "real mess," and he said the man had facial hair around his mouth.

The three men got into the brown car with a broken tail light and left. Reeves and McClain followed in their car. While Reeves and McClain chased the brown car, a St. Joseph police patrol car enroute to Bob Fay's went by. Officer Fisher was driving the patrol car, and he saw a brown

colored Buick with a broken tail light being chased by a little red sports car. Reeves was driving a red Beretta.

Reeves and McClain followed the car for several blocks. They saw a man in the back seat pointing what they believed to be a gun out the back window. The brown car went south on Interstate 29 when black smoke began bellowing from it. It stalled on the highway shoulder. Reeves and McClain passed the car and returned to Bob Fay's to inform police about the car.

Police found the brown car abandoned on the interstate. Inside the car's trunk were boxes of video equipment. Labels on the boxes said, "Bob Fay's T.V. and Appliance." Officer Fisher recognized the car as the same vehicle he had seen earlier.

At about 3:00 A.M., Gary Murphy, a patrolman with the Buchanan County Sheriff's Department, investigated a report of a man lying on the shoulder of Interstate 29. About five or six miles from where the brown car had been abandoned, Murphy found Neal standing near the highway. The wind-chill factor was about 60–degrees below zero. Neal was wearing blue denim jeans and an unzipped, "fatigue green" Army field jacket. He told Murphy that he had gotten into a disagreement with his brother in St. Joseph and was walking back to Excelsior Springs. He said he lived on Belle Street in Kansas City. At Neal's request, Murphy took him to the Salvation Army shelter in St. Joseph.

Murphy learned of the burglary at Bob Fay's a brief time later. He returned to the Salvation Army shelter and detained Neal until Sergeant Edmund Schimmel of the St. Joseph police arrived. They arrested Neal and took him to police headquarters. There, while doing an inventory of Neal's belongings, Schimmel found what he believed to be glass fragments in the pockets of Neal's jacket. These glass fragments appeared to be the same as the glass fragments around Bob Fay's broken door.

From a photographic lineup, Reeves identified Neal as one of the men he had seen during the burglary. Reeves later identified Neal at trial as the man he had seen holding the gun.

## SUFFICIENCY OF THE EVIDENCE

■ Neal contends the trial court erred in overruling his motions for judgment of acquittal at the close of the state's evidence and at the close of all the evidence and in accepting the jury's verdict of guilty. He argues that the evidence was insufficient to prove beyond a reasonable doubt that he participated in the burglary because Reeves' identification of Neal was equivocal and the glass fragments found in Neal's pockets did not prove his involvement in the burglary. We disagree.

■ When reviewing the sufficiency of evidence, we consider all the evidence and its inferences in a light most favorable to the verdict, and we reject all contrary evidence and inferences. *State v. Sladek*, 835 S.W.2d 308, 310 (Mo. banc 1992). We neither weigh the evidence nor determine its reliability or the witnesses' credibility. *Id.; State v. Hamilton*, 817 S.W.2d 8, 11 (Mo.App.1991). Our review is limited to determining whether the jury had substantial evidence from which to find the defendant guilty beyond a reasonable doubt. *State v. Dulany*, 781 S.W.2d 52, 55 (Mo. banc 1989). The "testimony of a single witness may be sufficient to constitute substantial evidence to make a submissible case." *State v. Sumowski*, 794 S.W.2d 643, 645 (Mo. banc 1990). A jury may believe all, some or none of a witness' testimony, and the jury must resolve any contradictions or conflicts in that testimony. *Dulany*, 781 S.W.2d at 55.

Reeves identified Neal as one of the persons who broke into Bob Fay's. Although Reeves admitted that he told a friend that he was not sure whether Neal was involved in the burglary, Reeves had an explanation which the jury was free to accept: His friend was in jail with Neal at the time, and he did not want anything that he knew to get back to Neal.

In addition to Reeves' identification of Neal, the jury had other evidence: Neal's presence on I–29 at 3:00 A.M. a few miles from the abandoned getaway car, Reeves' detailed description of one of the men con-

sistent with Neal's appearance, and the discovery of glass fragments in Neal's pockets.

We conclude that the evidence was sufficient for the jury to find Neal guilty beyond a reasonable doubt. Neal contends that because Reeves' girlfriend could not identify Neal and because Reeves could not identify the car used in the burglary with certainty raises doubt as to Reeves' ability to identify a person's face. These were factors for the jury to consider, not this court. *Sumowski,* 794 S.W.2d at 645. We deny Neal's point of error.

## FINGERPRINT EVIDENCE

■ Neal complains that the trial court sustained the state's objection to his questioning of Detective Charles Przybylski about fingerprints on the boxes found in the brown car. During his cross-examination of Przybylski, Neal's attorney asked Przybylski:

Q. In the trunk of the car there were a number of camcorders still boxed up in new condition, is that right?

A. Yes.

Q. And did you find any fingerprints of Sam Neal?

[PROSECUTOR]: Objection, Judge. There's been no evidence that he even attempted to.

THE COURT: Sustained.

Q. Did you lift any latent prints, Detective?

[PROSECUTOR]: Objection, Judge.

THE COURT: Sustained.

[DEFENSE COUNSEL]: Well, I don't know if he did or not, but I'd like to find out.

THE COURT: The objection has been sustained[.]

■ The court's rulings were proper. The state is not obligated to take fingerprints from articles allegedly touched by a defendant or to account at trial for the absence of fingerprint evidence. A trial judge may preclude a defendant from presenting evidence on such issues. *State v. Keely,* 791 S.W.2d 864, 866 (Mo.App.1990);

*State v. Beck,* 785 S.W.2d 714, 720 (Mo. App.1990).

Neal relies heavily upon this court's decision in *State v. Hall,* 687 S.W.2d 924, 928 (Mo.App.1985), to suggest that his question was proper. *Hall,* indeed, contains discussion which suggests that a defendant may show that the state could have fingerprinted objects which the defendant was charged with possessing and did not do it. The Supreme Court of Missouri, however, has specifically rejected this notion. *State v. Schneider,* 736 S.W.2d 392, 402 n. 7 (Mo. banc 1987), *cert. denied,* 484 U.S. 1047, 108 S.Ct. 786, 98 L.Ed.2d 871 (1988). This court also has held, in *State v. Cooper,* 719 S.W.2d 20, 23 (Mo.App.1986), that *Hall* was not authoritative on that issue because the discussion was *dicta,* unsupported by any authority, and was contrary to existing precedent. Neal's point is without merit.

## CLOSING ARGUMENT

Neal contends the trial court erroneously failed to declare a mistrial, *sua sponte,* because of the state's closing argument. Neal argues that the state impermissibly defined reasonable doubt and lowered the state's burden of proof. He also complains that the state's reference to Neal as "this criminal" was inflammatory, prejudicial, implied special knowledge of Neal's guilt by the state, and improperly labeled Neal as a criminal. We disagree.

Definition of Reasonable Doubt

■ The state asserted in the rebuttal portion of its closing argument:

Here's the bottom line on all this: Reasonable doubt is a doubt based upon reason and common sense. You don't need to get all technical. You don't need to get all analytical about it. It's a doubt based on reason and common sense.

After hearing Sean Reeves say, unruly, unkempt hair, dark clothes, dark jeans, the next morning, December 8th, Sam Neal, he's the guy. You heard him say that. Sam Neal has glass in his pockets. Glass is found in the vehicle that Sean Reeves said that Sam Neal is driving. Sam Neal is found five or six miles down the road about three hours

later from where that car would have stalled. Can you have a reasonable doubt based on that evidence?

The instructions said proof beyond a reasonable doubt is proof that leaves you firmly convinced of the defendant's guilt. All that means is, do you really think he's guilty? Do you really believe it? Are you convinced of it in your heart? And if you're convinced of it in your heart, he's guilty. That's it, proof beyond a reasonable doubt. That's what it is.

Neal did not object to these statements at trial or in his motion for new trial; he did not preserve the matter for our review.

Rule 30.20 does authorize our review of "plain errors affecting substantial rights ... when the court finds that manifest injustice or miscarriage of justice has resulted therefrom." The prosecutor's argument did not result in manifest injustice.

In *State v. Burnfin,* 606 S.W.2d 629 (Mo.1980), the Supreme Court considered, under a plain error review, a prosecutor's offering of an altered definition of reasonable doubt. The court stated:

> [W]e shall assume that [the definition] was improper as elaborating further upon or attempting to define reasonable doubt. However, by its instructions the court told the jury that it was "the Court's duty ... to instruct ... upon the law applicable to the case," and that it was the jury's duty "to follow the law as the Court gives it to you." The court gave the jury the approved instruction on reasonable doubt[.] It was also told that the arguments of counsel did not constitute evidence, and that in their deliberations the jury should "be governed" by the evidence as they remember it "and by the law as given in these instructions."

Assuming, as we have done, that the prosecutor's statement was improper, in view of the instructions that were given by the court, we cannot say as a matter of law that a jury composed of reasonably intelligent persons were confused or misled by the argumentative statement of the prosecutor so as to result in manifest injustice or a miscarriage of justice. *Id.* 606 S.W.2d at 631.

The trial court gave the jury the approved instruction on reasonable doubt, MAI–CR3d 302.04. It informed the jury that counsel's arguments did not constitute evidence and that they must be governed by the evidence as they remembered it and by the law as given in the instructions. For these reasons, we do not find that manifest injustice resulted from the prosecutor's argument.

"This Criminal" Label

■ Neal argues that the state's referring to him as "this criminal" was inflammatory and prejudicial, implied special knowledge of Neal's guilt by the prosecutor and improperly labeled him as a criminal in violation of his right to be presumed innocent. The prosecutor made the argument in response to defense counsel's argument that no criminal would be so dumb as to abandon a getaway car loaded with stolen goods and casually stroll down the same highway without attempting to avoid police. The prosecutor said:

> [Defense counsel] said, would a criminal be that stupid? Well, of course, they would. If they were intelligent, they wouldn't be criminals in the first place, because none of us like to see our fellow citizens victimized by fellow criminals. And that's why we have juries, and that's why we put them in jail.
>
> These are not intelligent people. They don't think like we do. Correct that: They may be very intelligent, but their thought processes are not the same as law-abiding people. Criminals high-tail it. Boy, do they. And what was this criminal doing? This criminal told Deputy Murphy that he had gotten into a fight with a brother who was in St. Joe, and he was going to Excelsior Springs. No car; no bike; no motorized vehicle whatsoever. [Sixty] degrees below zero wind chill. And this criminal just decided to take off and go from St. Joseph to Excelsior Springs. He was high-tailing it. That's exactly what he was doing; he was high-tailing it out of St. Joe.

Neal did not object to these statements at trial or in a motion for new trial.

Again, pursuant to Rule 30.20, we can review Neal's unpreserved assignment of error only if we conclude that it was plain error which resulted in manifest injustice or a miscarriage of justice. We do not.

A court rarely should grant "plain error" review for purported errors during closing arguments. The absence of an objection and some request for relief limits the court's options to uninvited interference with closing argument, and the risk of increased error. *State v. Vinson*, 833 S.W.2d 399, 407 (Mo.App.1992). "A holding that would require the judge to interrupt counsel [during closing argument] presents myriad problems[.]" *State v. Kempker*, 824 S.W.2d 909, 911 (Mo. banc 1992). "[T]rial strategy looms as an important consideration" in deciding whether to object to a particular argument. *Vinson*, 833 S.W.2d at 407 (quoting *State v. Wood*, 719 S.W.2d 756, 759 (Mo. banc 1986)).

### DISQUALIFICATION OF PROSECUTOR'S OFFICE

Neal complains that the trial court did not disqualify, on its own motion, the Buchanan County Prosecutor's Office. He asserts that his original attorney, Kelly Richey, became an assistant prosecutor in the Buchanan County office after defending him; therefore, the prosecutor office's continued prosecution of him was a conflict of interest. Neal did not object to the prosecutor's office's continued involvement in the case and failed to preserve the issue for appellate review. We review it only for plain error. Rule 30.20.

We agree that a conflict arose because of Richey's joining the prosecutor's office, *State v. Croka*, 646 S.W.2d 389, 393 (Mo. App.1983), but we do not find reviewable plain error. "Prejudice is presumed," in such a situation, "subject to rebuttal only upon a showing that the defendant waived the conflict *and* that steps were taken to insulate the actual prosecution from the conflict." *State v. Ross*, 829 S.W.2d 948,

952 (Mo. banc 1992) (emphasis in the original).

Neal contends that the trial court should have made itself aware of the conflict after he informed the court that his former attorney "was Kelly [Richey,] and she's a prosecutor now." Even if Neal is correct, the court's failure to inquire into the matter does not justify plain error review.

We grant plain error review only when the error "so substantially affects the rights of the accused that a 'manifest injustice or miscarriage of justice inexorably results if left uncorrected.'" *State v. Burgess*, 800 S.W.2d 743, 746 (Mo. banc 1990). "Relief under plain error … requires that appellant go beyond a mere showing of demonstrable prejudice to show manifest prejudice affecting his substantial rights." *State v. Hornbuckle*, 769 S.W.2d 89, 93 (Mo. banc), *cert. denied*, 493 U.S. 860, 110 S.Ct. 171, 107 L.Ed.2d 128 (1989).

Neal's attorney testified that Richey was not involved in the prosecution of Neal's case and did not communicate any information about the case to the prosecutor. We conclude that manifest injustice did not result.

### REASONABLE DOUBT INSTRUCTION

Neal contends the trial court erred in giving the reasonable doubt instruction patterned after MAI–CR3d 302.04. Neal did not object to the use of the instruction at trial and failed to preserve the issue for appellate review. Again, we review the issue only for plain error. Rule 30.20.

Neal asserts that the instruction was repugnant to the U.S. Constitution by lowering the state's burden of proof by equating "reasonable doubt" with proof that leaves the jury "firmly convinced" of guilt. He also complains that the instruction's language that the jurors' "doubt be based upon reason and common sense" and they need only be "firmly convinced" of the defendant's guilt suggested that jurors were required to have more doubt than required by due process for an acquittal.

*Cage v. Louisiana,* 498 U.S. 39, 111 S.Ct. 328, 112 L.Ed.2d 339 (1990).

The Supreme Court of Missouri has repeatedly upheld the validity of MAI–CR3d 302.04 in the face of such an attack. *State v. Ervin,* 835 S.W.2d 905, 924 (Mo. banc 1992); *State v. Blankenship,* 830 S.W.2d 1, 13 (Mo. banc 1992); *State v. Griffin,* 818 S.W.2d 278, 282 (Mo. banc 1991). The point is denied.

## INEFFECTIVE ASSISTANCE OF COUNSEL

Neal appeals the denial of his Rule 29.15 motion for post-conviction remedies. He contends that he was denied effective assistance of counsel because his attorney failed to: (1) object to the state's closing argument when it attempted to define reasonable doubt; (2) ask for the disqualification of the Buchanan County Prosecutor's office; (3) seek suppression of Reeves' identification testimony; and (4) seek exclusion of Neal's clothing and its contents from evidence. Neal failed to meet his burden of establishing that his trial counsel was ineffective.

To establish ineffective assistance of counsel, Neal must show that his attorney did not exercise the customary skill and diligence a reasonably competent attorney would have exercised and that this prejudiced his defense. *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). We presume Neal's attorney to have been competent and that the deficiencies complained of were sound trial strategy. *Id.; State v. Stepter,* 794 S.W.2d 649 (Mo. banc 1990). Our review is limited to determining whether the findings, conclusions, and judgment of the motion court were clearly erroneous. *Id.*

State's Closing Argument

■ Neal asserts that his attorney's failure to object to the state's closing argument when it defined reasonable doubt for the jury constituted ineffective assistance of counsel. "[T]his Court's finding of no manifest injustice on direct appeal serve[s] to establish a finding of no prejudice under the *Strickland* test." *Clemmons v. State,* 785 S.W.2d 524, 530 (Mo. banc), *cert. denied,* 498 U.S. 882, 111 S.Ct. 229, 112 L.Ed.2d 183 (1990); *Sidebottom v. State,* 781 S.W.2d 791 (Mo. banc 1989), *cert. denied,* 497 U.S. 1032, 110 S.Ct. 3295, 111 L.Ed.2d 804 (1990). Neal's contention is without merit.

Disqualification of Prosecutor's Office

■ The same analysis holds true for Neal's contention that his attorney was ineffective for not moving to disqualify the Buchanan County Prosecutor's office. Although the Supreme Court had held that prejudice should be presumed and that the entire prosecutor's office should be disqualified, *Ross,* 829 S.W.2d at 952, prejudice for ineffective assistance of counsel claims is "shown by proof that, but for counsel's unprofessional errors, there was a reasonable probability that the result would have been different." *Sidebottom,* 781 S.W.2d at 796.

> Prejudice is not presumed from a showing of deficient performance of counsel, but must be affirmatively proved.... It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding, ... rather, defendant must show that there is a reasonable probability that, but for the errors by counsel, the fact finder would have had a reasonable doubt respecting punishment.... If it is simpler to dispose of a claim of ineffectiveness on the ground of lack of sufficient prejudice, that course should be followed.... "There is no reason for a court ... to address both components of the inquiry if the defendant makes an insufficient showing on one."

*Id.* (quoting *Strickland,* 466 U.S. at 697, 104 S.Ct. at 2069).

Neal bears the burden of proving his grounds for relief by a preponderance of the evidence. Rule 29.15(h). Neal fails to show that, but for his attorney's failure to object and to move to disqualify the prosecutor's office, there was "a reasonable probability that the result would have been different." He failed to establish sufficient prejudice to satisfy the *Strickland* test.

Neal asserts that he was also denied his rights to a fair trial and to due process of

law by Richey's employment with the prosecutor's office, and, therefore, the motion court erred when it denied his Rule 29.15 motion. This issue was decided in Neal's direct appeal and cannot be relitigated in a post-conviction proceeding. *O'Neal v. State*, 766 S.W.2d 91, 92 (Mo. banc 1989). Neal's point is denied.

Reeves' Identification

■ Neal argues that his attorney was also ineffective for failing to move to suppress Reeves' in-court and out-of-court identifications of Neal. Neal complains that the photo lineup from which Reeves identified him was unduly suggestive because his photograph was the only one clearly labeled, "Police Department." We disagree that this established ineffective assistance of counsel.

■ To demonstrate a counsel's ineffectiveness in failing to seek suppression of evidence, a defendant must establish that his claim is meritorious and "that there is a reasonable probability that the verdict would have been different absent the excludable evidence in order to demonstrate actual prejudice." *Kimmelman v. Morrison*, 477 U.S. 365, 375, 106 S.Ct. 2574, 2583, 91 L.Ed.2d 305 (1986). We will not deem counsel to have been ineffective for failing to file a meritless motion or for failing to object to admissible evidence. *State v. Hunter*, 840 S.W.2d 850, 870 (Mo. banc 1992); *State v. Twenter*, 818 S.W.2d 628, 643 (Mo. banc 1991).

■ The photo lineup was not unduly suggestive. The test for identification testimony is whether the pretrial identification procedure was impermissibly suggestive and, if so, what impact did the procedure have on the reliability of the identification. *Hornbuckle*, 769 S.W.2d at 93. All of the photographs Reeves examined were police "mug shots." Although Neal's photograph was the only one on which "Police Department" was clearly visible, the label was discernible, though obscured by evidence tape, on another suspect's photograph, and the letters "PO" appeared beneath the photograph of another suspect. Reeves' trial testimony demonstrated that his identification of Neal was based upon his observations at the time of the offense and was not swayed by the police's identification procedures.

■ Moreover, allegations of ineffective assistance of counsel relating to matters of trial strategy do not provide a basis for post-conviction relief. *Rainwater v. State*, 770 S.W.2d 368, 370 (Mo.App. 1989). Counsel is allowed wide latitude in conducting a defense and may use his best judgment in matters of trial strategy. *Stuckey v. State*, 756 S.W.2d 587, 593 (Mo. App.1988). Whether or not to file a motion to suppress is a matter of trial strategy left to counsel's determination. *State v. Sanders*, 539 S.W.2d 458, 461 (Mo.App.1976).

Glass Fragments

■ Finally, Neal asserts that his attorney was ineffective for not moving to suppress Neal's clothing and its contents seized at the time of his arrest. Neal argues that glass fragments found in his jacket should have been suppressed because they resulted from an unlawful arrest, and his attorney was ineffective for not objecting on that ground. Neal contends his arrest was unlawful because it was without probable cause and without a warrant. We disagree that the arrest was unlawful.

"Probable cause to arrest exists when the arresting officer's knowledge of the facts and circumstances is sufficient to warrant a prudent person's belief that the suspect is committing or has committed an offense." *State v. White*, 835 S.W.2d 942, 953 (Mo.App.1992). At the time of Neal's arrest, officers knew that Neal matched a witness' description, that officers had found him five to six miles away from the getaway car and on the same highway, and that Neal gave an officer an address identical to that given by another suspect. This established sufficient probable cause for his arrest.

■ Exigent circumstances obviated the need for a warrant. *See Minnesota v. Olson*, 495 U.S. 91, 100–101, 110 S.Ct. 1684, 1690, 109 L.Ed.2d 85 (1990); *Payton v. New York*, 445 U.S. 573, 583, 100 S.Ct.

1371, 1378, 63 L.Ed.2d 639 (1980). The exigent circumstances emanated from the gravity or violent nature of the suspected offense, reports that Neal was armed, the officers' probable cause to believe that Neal had committed the burglary, and a likelihood that Neal would escape if officers did not apprehend him swiftly. *State v. Varvil,* 686 S.W.2d 507, 512 (Mo.App. 1985).

## CONCLUSION

We affirm Neal's convictions and the trial court's denial of his Rule 29.15 motion for post-conviction relief.

All concur.