David LEISURE, Appellant,

v.

STATE of Missouri, Respondent.

No. 73693.

Supreme Court of Missouri,
En Banc.

March 24, 1992.

As Modified on Denial of Rehearing
April 21, 1992.

Rehearing Denied June 2, 1992.

Cheryl Rafert, Richard Sindel, Clayton, for appellant.

William L. Webster, Atty. Gen., Millie Aulbur, Asst. Atty. Gen., Jefferson City, for respondent.

BENTON, Judge.

David Leisure was convicted of murder in the bombing death of James Michaels, Sr., and sentenced to death. His conviction was affirmed in *State v. Leisure,* 749 S.W.2d 366 (Mo. banc 1988). Leisure filed for post-conviction relief seeking to vacate his sentence. An evidentiary hearing was held and thereafter, the 29.15 motion was denied. The judgment of the motion court is affirmed.

Leisure timely filed a pro se Rule 29.15 motion on May 18, 1988. An amended motion was timely filed by counsel on July 18, 1988. The trial judge dismissed the motion without an evidentiary hearing. On May 16, 1989, this Court vacated the judgment of dismissal and remanded with instructions to hold an evidentiary hearing.

On remand, Leisure's counsel attempted to file a second amended motion, which was dismissed by the motion court as untimely. On May 29, 1990, Leisure's current counsel entered his appearance and requested an additional 30 days to file a second amended motion. The motion court denied leave to file the additional amended motion and granted a protective order limiting all testimony and evidence to matters raised in the original pro se and the first amended Rule 29.15 motion.

An evidentiary hearing was held and evidence was presented by both parties. Leisure's testimony was received by deposition pursuant to Rule 29.15(h). The motion judge issued a lengthy memorandum opinion and order denying the motion to vacate sentence.

I.

This Court's review of the denial of Leisure's motion is limited to determining

whether the findings and conclusions are clearly erroneous. Rule 29.15(j). The findings and conclusions are clearly erroneous only if, after review of the entire record, the appellate court is left with the definite and firm impression that a mistake has been made. *State v. Vinson*, 800 S.W.2d 444, 448 (Mo. banc 1990); *Amrine v. State*, 785 S.W.2d 531, 533 (Mo. banc 1990), *cert. denied*, — U.S. ——, 111 S.Ct. 227, 112 L.Ed.2d 181 (1990).

Four of Leisure's points relate to issues raised on direct appeal. Leisure claims his counsel was ineffective in the following respects: (1) failure to adequately substantiate a motion to strike venireperson Zewiski; (2) failure to file a timely motion for change of venue; and (3) failure to object adequately to the prosecutor's cross-examination of the defense psychologists. Leisure also maintains that (4) capital punishment should not be imposed on a mentally immature person because it violates his right to due process, equal protection, and freedom from cruel and unusual punishment.

In *O'Neal v. State*, 766 S.W.2d 91, 92 (Mo. banc 1989), *cert. denied*, 493 U.S. 874, 110 S.Ct. 206, 107 L.Ed.2d 159 (1989), the fact that issues were presented on direct appeal as trial errors and ruled against the defendant was characterized as an "insurmountable obstacle". This Court specifically rejected attempts to convert trial errors into viable theories of ineffective assistance of counsel in the post-conviction proceeding. *Id.* at 93. Issues decided upon direct appeal cannot be relitigated on a theory of ineffective assistance of counsel in a post-conviction proceeding. *Amrine v. State*, 785 S.W.2d at 536.

Leisure asks this Court to reconsider the law as to the cognizability, in the post-conviction proceeding, of issues raised on direct appeal. This Court declines to do so. Issues decided on direct appeal will not be reconsidered.

## II.

The remaining points on appeal primarily involve allegations of ineffective assistance of counsel. In order to prevail on such claims, the movant must show that his attorney failed to exercise the customary skill and diligence that a reasonably competent attorney would perform under similar circumstances, and second, movant must show that he was thereby prejudiced. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984); *Sanders v. State*, 738 S.W.2d 856, 857 (Mo. banc 1987). There is a strong presumption that the attorney's conduct was proper. *Id.* at 858.

Leisure first alleges ineffective assistance of counsel for refusal to present alibi witnesses and for proceeding with a diminished capacity defense contrary to Leisure's wishes and instructions. The motion court denied this point based on its finding that trial counsel's decision was reasonable trial strategy.

Leisure claims that his trial counsel failed to call alibi witnesses, Elmer Lawson and Sandra Bradford (Leisure's sister-in-law). Both witnesses testified at the evidentiary hearing, relating that they were with Leisure on the day of the bombing. The essence of Lawson's testimony was that he was with Leisure from approximately 9:30 or 10:00 a.m. until Leisure left to go help Sandra Bradford with her car sometime after 12:30 p.m. Sandra Bradford testified at the evidentiary hearing that she called Leisure around 12:00 to 12:30 p.m. but was unable to reach him. She called back an hour later and asked him to meet her after work to look at her car. Bradford testified that Leisure was waiting for her in the parking lot when she got off work at 4:00 p.m.

Leisure's trial attorney, Alan Zvibleman, clearly investigated an alibi defense in the instant case. Both Sandra Bradford and Elmer Lawson testified at the evidentiary hearing that Zvibleman had contacted them. Jerry Bassett, then a non-attorney who assisted Zvibleman, also interviewed these potential witnesses.

At the evidentiary hearing, Zvibleman testified that he made a decision not to call Bradford or Lawson only weeks before the actual trial commenced. Zvibleman had re-

ceived a psychological evaluation from Dr. Cuneo indicating Leisure was borderline mentally retarded. After Dr. Armour, head of forensic psychology at Malcolm Bliss Hospital, agreed with Dr. Cuneo's assessment of Leisure's mental capacity, Zvibleman decided that Leisure had a viable diminished capacity defense.

Counsel met with Leisure to discuss the options for defense. The record demonstrates Leisure's initial reluctance to drop the alibi defense. Zvibleman strongly advised pursuing diminished capacity (to the exclusion of alibi) based on his belief that the alibi witnesses were not credible and that it would be a tactical mistake to present both defenses—alibi and diminished capacity. *See State v. Stepter*, 794 S.W.2d 649, 657 (Mo.1990) (counsel not ineffective for failing to present defenses of alibi and self-defense since the defenses were inconsistent).

■ The motion court found that trial counsel's decision to pursue the diminished capacity defense was a reasonable trial strategy. This finding is not clearly erroneous. The selection of witnesses and the introduction of evidence are questions of trial strategy. *Sanders v. State*, 738 S.W.2d at 858. A decision not to call witnesses to testify, as a matter of trial strategy, is virtually unchallengeable. *Brown v. State*, 785 S.W.2d 759, 762 (Mo.App.1990).

■ Furthermore, Leisure did not establish that he was prejudiced by his counsel's failure to call Lawson or Bradford as witnesses. To demonstrate prejudice, a movant must establish that there is a reasonable probability that, but for counsel's actions, the result of the trial would have been different. *Sloan v. State*, 779 S.W.2d 580, 582 (Mo. banc 1989), *cert. denied*, 494 U.S. 1060, 110 S.Ct. 1537, 108 L.Ed.2d 776 (1990). A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Stokes v. State*, 688 S.W.2d 19, 23 (Mo.App.1985).

Both Zvibleman and Bassett testified at the evidentiary hearing that neither Bradford nor Lawson appeared credible. For example, Lawson insisted that he worked for Leisure prior to the bombing, but maintained that his employment commenced in 1985 or 1986. The record is clear that the bombing occurred in 1980.

■ Additionally, the testimony of Bradford and Lawson did not account for Leisure's whereabouts for a significant period of time on the day of the bombing. If a potential witness's testimony would not unqualifiedly support a defendant, the failure to call such a witness does not constitute ineffective assistance of counsel. *Hamilton v. State*, 770 S.W.2d 346, 348 (Mo.App. 1989).

Based on the shortcomings inherent in the two witnesses' testimony and the viability of a diminished capacity defense in this particular case, it cannot be said that trial counsel was ineffective in his choice of trial strategy. The point is denied.

### III.

Leisure argues that counsel was ineffective for failure to rebut the allegedly false testimony of jail superintendent L.T. Brown. During the penalty phase of Leisure's trial, Captain Daniel Gleiforst testified that Leisure had been an ideal prisoner while incarcerated at the city jail. On cross-examination, the state asked Gleiforst if he had been suspended two days for allowing Leisure to receive an unauthorized visitor. Gleiforst denied the suspension. The prosecutor called Gleiforst's supervisor, L.T. Brown, who testified that Gleiforst was suspended for allowing Leisure the favor of an unauthorized visitor.

Leisure claims that Zvibleman should have called Brown's supervisor, George Kinsey, to rebut Brown's testimony. An affidavit prepared by Kinsey indicated that he had complete authority over disciplinary actions and that Gleiforst had not been suspended for two days.

L.T. Brown was the last person to testify during the penalty phase of Leisure's trial, and there was no endorsement of Brown. Zvibleman testified that he did not even know of Kinsey's existence until the trial was over.

A court is not required to consider the performance component of *Strickland* before examining for prejudice. "If it is easier to dispose of the claim on the ground of lack of sufficient prejudice, the reviewing court is free to do so." *O'Neal v. State*, 766 S.W.2d at 92, *quoting Strickland*, 466 U.S. at 697, 104 S.Ct. at 2069.

■ Gleiforst's testimony was adduced during the penalty phase of the trial after the jury had found Leisure guilty of a heinous crime. Gleiforst's testimony was presented to show that Leisure had been an ideal prisoner during the time of his incarceration in the city jail. L.T. Brown's testimony was presented to show Gleiforst's possible bias in favor of Leisure. It does not appear that impeaching Brown's testimony would have changed the sentence in this case. The point is denied.

## IV.

■ During the trial, the prosecution introduced certain letters from Leisure to demonstrate his mental capacity. Leisure argues that Zvibleman was ineffective for failing to call Fredrico Lowe Bey who had composed the letters, which Leisure merely copied.

Zvibleman testified at the evidentiary hearing that he believed Dr. Armour's testimony effectively established that Leisure had copied the letters. The selection of witnesses and the introduction of evidence are questions of trial strategy, and the choice of trial strategy is not a foundation for finding ineffective assistance of counsel. *Harry v. State*, 800 S.W.2d 111, 115 (Mo.App.1990). Zvibleman cannot be said to be ineffective for failing to call Lowe Bey since Dr. Armour effectively addressed the issue.

## V.

■ Leisure states that he received ineffective assistance of counsel as a result of Zvibleman's failure to timely inform the trial judge that juror Jack Warner might have been involved in a relationship with Leisure's girlfriend, Melinda Corbin. Virginia Graham, Leisure's aunt, testified at the evidentiary hearing that Leisure's eight-year-old daughter, Amanda, identified Warner as someone she had seen with her mother, Melinda Corbin. Graham testified that she brought this to trial counsel's attention several times during the trial, as did Leisure.

Zvibleman spoke to Melinda Corbin over the telephone but she refused to come to court to identify Warner and would not say whether she even knew a person by that name. Zvibleman did not bring the matter to the court's attention during the trial since he could not independently verify the information. He advised the court at the time of sentencing of Warner's possible bias.

The motion court found there was no evidence that Warner either withheld information when questioned on voir dire, or was aware of Leisure's association with Melinda Corbin. Even friendship with a witness would be insufficient, in and of itself, to disqualify a venireperson; an actual bias against the litigant must be shown. *State v. Johnson*, 721 S.W.2d 23, 31 (Mo.App.1986). Warner's alleged relationship with Corbin, even if true, would not necessarily show bias. Ms. Corbin was not a witness at trial and there was no indication that Warner was aware of a relationship between Leisure and Corbin. This point is speculation unsupported by any substantive evidence. The motion court's finding that Zvibleman's actions with respect to juror Warner were reasonable is not clearly erroneous.

## VI.

Leisure alleges that the trial court lost jurisdiction over his case for failure to commence trial within 120 days as required by § 217.490 RSMo 1986 (Interstate Agreement on Detainers Act). Leisure claims that trial counsel was ineffective for failing to raise the detainer issue. The motion court denied this point finding that Leisure had failed to present evidence in support of his claim.

Zvibleman testified that no detainer had been filed for Leisure. Leisure presented no evidence that a detainer existed. Zvible-

man testified at the motion hearing that he did extensive research on the detainer issue and talked to several attorneys regarding a possible basis to dismiss. Zvibleman found no viable theory for obtaining a dismissal since no detainer was ever filed.

Leisure argues a writ of habeas corpus ad prosequendum was issued to secure his attendance at the state trial, and constitutes sufficient evidence of his claim. Leisure filed a supplemental legal file with this Court containing the writ, which Leisure states was before the motion judge.

The existence of the writ of habeas corpus ad prosequendum does not affect the motion court's denial of this point. Where a federal prisoner's appearance in state court is obtained via a writ of habeas corpus ad prosequendum, the Agreement on Detainers is not applicable. *State v. Leisure*, 810 S.W.2d 560, 576 (Mo. App.1991). Trial counsel cannot be found ineffective for not filing a motion to dismiss that is rejected by Missouri case law. Failure to make a motion of extremely doubtful validity provides no basis for a claim of ineffective assistance of counsel unless there has been a genuine deprivation of a right to a fair trial. *Daniels v. State*, 751 S.W.2d 399, 402 (Mo.App.1988).

## VII.

Leisure claims that he was denied his right to be present at all critical stages of the trial since he was confined in a holding cell while peremptory challenges were made. Leisure includes in this point a claim of ineffective assistance of counsel for failure to ensure his presence at this stage of trial. Leisure claims that his absence resulted in a jury composed of people that Leisure wanted to peremptorily strike, specifically venireperson John Fuller because he supervised the victim's grandson at Anheuser–Busch.

Although the motion court did not specifically resolve the issue of whether Leisure was or was not present during the time peremptory strikes were conveyed to the trial judge, the motion judge found the issue irrelevant. "The fact that defendant was not present when counsel performed

the messenger service of advising the court of the names of those jurors to be peremptorily challenged is immaterial." *Montgomery v. State*, 461 S.W.2d 844, 847 (Mo. 1971).

Furthermore, the record supported the finding that John Fuller was not biased. Fuller testified during voir dire that he was not the direct supervisor of the victim's grandson; he had not formed an opinion in the case; and he could be totally fair to Leisure. Trial counsel's decision that Fuller could be a fair and unbiased juror was supported by the record. The decision to leave Fuller on the panel was trial strategy, which is not a basis for attack on the issue of competency of counsel. *Driscoll v. State*, 767 S.W.2d 5, 9 (Mo. banc 1989), *cert. denied*, 493 U.S. 874, 110 S.Ct. 210, 107 L.Ed.2d 163 (1989) (decision to leave juror on panel despite her views on alcohol consumption was trial strategy).

Additionally, Leisure could not show prejudice since the juror clearly indicated he did not know the victim's grandson socially and had not formed an opinion about the case. Leisure cannot show that the outcome of the trial would have been different had Fuller been struck from the panel. *Sanders v. State*, 738 S.W.2d at 860–861.

## VIII.

Leisure attacks his trial counsel as ineffective for failing to present exculpatory evidence from three witnesses who were allegedly involved in the bombing death of James Michaels.

Leisure claims that *Kenneth Loewe* confessed to California FBI agents that he and John Ramo detonated the bomb that killed Michaels. Zvibleman testified that he reviewed Loewe's statement and found it confusing and inconsistent. Both he and Bassett were of the opinion that the statement was incredible. Further, Zvibleman was satisfied with the state's theory that Frank Prader built the bomb. Zvibleman reasoned that the jury would find it repugnant that the person who built the bomb (Prader) was granted total immunity, and that

feeling would benefit his client at trial. Zvibleman's decision not to use Loewe as a witness was based on a reasonable determination that it would not be beneficial to the defense's case.

A claim of ineffective assistance of counsel must fail where the attorney conduct involves the exercise of a choice in the presentation of the defense or procedures selected in trial, which may, within a wide range of reasonable professional assistance, be considered sound trial strategy. *Porter v. State*, 682 S.W.2d 16, 19 (Mo.App. 1984). To establish ineffective assistance of counsel for failure to present a witness, movant must prove that the witness would have testified if called, and that the witness's testimony would have aided the defense. *State v. Richard*, 798 S.W.2d 468, 471 (Mo.App.1990). Although Loewe attended the evidentiary hearing, he refused to answer any questions, asserting his Fifth Amendment right against self-incrimination. *Cf. United States v. Leisure*, 844 F.2d 1347, 1361 (8th Cir.1988) (Loewe's statement not sufficiently exculpatory to warrant a new trial).

Leisure also claims that *Robert Allan* confessed to an informant that he made the bomb that killed Michaels. Prior to trial, Bassett interviewed Robert Allan and found him unwilling to cooperate. At the evidentiary hearing, Allan denied saying he made the bomb that killed the victim. Again, trial counsel's decision not to call this witness fell within the ambit of reasonable trial strategy. Selection of witnesses is not a foundation for finding ineffective assistance of counsel. *Sanders v. State*, 738 S.W.2d at 858.

Finally, Leisure claims he showed Zvibleman an FBI affidavit stating that *Stanley Kowalski* was paid $10,000.00 to make the bomb and place it on Michael's car. Leisure claims his counsel was ineffective for failure to investigate Stanley Kowalski. Kowalski did not testify at Leisure's evidentiary hearing.

There is no evidence that Kowalski could have been located or that he would have testified. Leisure needed to show that Kowalski would have testified if called, and

that his testimony would provide a viable defense. *Franklin v. State*, 655 S.W.2d 561 (Mo.App.1983). Leisure failed to sustain his burden of proof on these issues. The point is denied.

## IX.

■ Leisure complains that the motion court improperly refused to allow Leisure to be present for the evidentiary hearing. Pursuant to a motion by the state, Leisure's testimony was received by deposition.

A post-conviction relief proceeding is a civil, not criminal, proceeding. *Robinson v. State*, 778 S.W.2d 811, 813 (Mo.App. 1989). The confrontation clause does not apply to a post-conviction relief hearing. *Cain v. State*, 780 S.W.2d 66, 67 (Mo.App. 1989) (no error in court receiving movant's testimony by deposition in Rule 24.035 evidentiary hearing). Rule 29.15(h) specifically provides that movant need not be present at any hearing ordered by the court and his testimony may be received by deposition. Point denied.

## X.

■ Finally, Leisure claims the motion court erred in refusing him leave to file a second amended motion. Leisure argues that the time limitations of Rule 29.15 violate his rights to seek habeas corpus.

Rule 29.15 does not operate as an unconstitutional suspension of the writ of habeas corpus. *White v. State*, 779 S.W.2d 571, 572–573 (Mo. banc 1989). Rule 29.15(f) provides for opportunity to amend a pro se motion within 30 days after counsel is appointed, or the entry of appearance of non-appointed counsel. The rule allows for the court to extend the time for filing one additional 30–day period. The law is clear that the time limitations of Rule 29.15 are valid and mandatory. *Day v. State*, 770 S.W.2d 692, 695 (Mo. banc 1989), *cert. denied*, 493 U.S. 866, 110 S.Ct. 186, 107 L.Ed.2d 141 (1989). Leisure filed both a pro se motion and an amended motion. He availed himself of all remedies available under Rule 29.15. The motion judge did

not err in denying Leisure's motion for leave to file a second amended motion.

In Leisure's proffered second amended Rule 29.15 motion (which he was not permitted to file), Leisure argued that the circuit court of the City of St. Louis lacked subject matter jurisdiction to try him for murder because the murder took place outside the boundaries of St. Louis City citing as support, *State v. Harvey*, 730 S.W.2d 271 (Mo.App.1987). This claim was *not* raised in Leisure's motion for new trial, in his original or amended Rule 29.15 motion to vacate sentence, or in the points relied on in the brief filed by Leisure's appellate counsel before this Court.

Section 541.033 RSMo 1986 provides as follows:

Persons accused of committing offenses against the laws of this state, except as may be otherwise provided by law, shall be prosecuted:

(1) In the county in which the offense is committed; or

(2) If the offense is committed partly in one county and partly in another, or if the elements of the crime occur in more than one county, then in any of the counties where any element of the offense occurred.

In *Jackson v. State*, 736 S.W.2d 515 (Mo. App.1987), the defendant claimed that the circuit court of St. Louis County did not have venue over the assault charge because the victim had been shot in St. Louis City. The court rejected defendant's argument finding that while the victim was shot in St. Louis City, she was raped and confined in St. Louis County; therefore an element of the offense occurred in St. Louis County. In the instant case an element of the offense occurred in St. Louis City—the bomb was placed under the victim's car at St. Raymond's Catholic Church in St. Louis City and Leisure suggested detonating the bomb there in order to kill the victim and his grandson who was standing outside the car. Clearly, deliberation and premeditation occurred in St. Louis City.

Leisure's reliance on *State v. Harvey* is misplaced. In the *Harvey* case, the victim was abducted in St. Louis County and taken to Illinois where she was shot and killed. The court held that Missouri had no jurisdiction over a capital murder unless the essential element of the killing occurred or was inflicted within this state's boundaries. *Id.* at 277–278.

The murder in the instant case was committed in Missouri, so there is no question of this state's jurisdiction. Instead the issue is one of proper venue—an issue controlled by § 541.033(2). It is relevant to note that in 1987 the legislature enacted § 541.191, RSMo Supp.1992 providing Missouri with jurisdiction over an offense if conduct constituting any element of the offense occurs within this state. The result in *Harvey*, which was based on an interpretation of the common law, is now controlled by § 541.191. The circuit court of St. Louis City had jurisdiction. Point denied.

### XI.

Leisure failed to establish that the judgment of the motion court was clearly erroneous. The judgment of the motion court overruling Leisure's Rule 29.15 motion is affirmed.

All concur.