STATE of Missouri, Respondent,

v.

Larry HARRIS, Appellant.

Larry HARRIS, Appellant,

v.

STATE of Missouri, Respondent.

Nos. WD 45630, WD 47424.

Missouri Court of Appeals,
Western District.

Jan. 11, 1994.

Raymond L. Legg, Office of the State Public Defender, Columbia, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Hugh L. Marshall, Asst. Atty. Gen., Jefferson City, for respondent.

Before BRECKENRIDGE, P.J., and KENNEDY and LOWENSTEIN, JJ.

BRECKENRIDGE, Presiding Judge.

Larry Harris appeals his conviction following a jury trial for the class C felony of failure to return rented personal property, § 578.150, RSMo 1986,[1] for which Mr. Harris

---

1. Section 578.150 was amended after the date of the commission of the offense by Mr. Harris.

was sentenced to five years' imprisonment. Mr. Harris also appeals the denial of his Rule 29.15 postconviction motion after an evidentiary hearing.

The judgments of the trial court and motion court are affirmed.

Mr. Harris raises three points on appeal. He alleges that (1) the trial court erred in sustaining the jury's verdict and in sentencing him because the state failed to prove his criminal intent beyond a reasonable doubt; (2) the trial court committed plain error when it overruled his off-the-record pretrial objection to being tried while clothed in his jail uniform and the motion court clearly erred in finding that he was not prejudiced by his attire; and (3) the motion court clearly erred in denying his postconviction motion for relief because he received ineffective assistance of counsel.

On January 19, 1991, Mr. Harris entered into a lease agreement with U.S. Rents It in Cole County, Missouri to rent a Hertz rental car for one week at $39 per day. The rental contract stated that Mr. Harris was to return the rental car, a four-door Chevrolet Celebrity, to the renting location on January 25, 1991. Mr. Harris paid for the rental with a credit card.

On October 18, 1990, and again on January 28, 1991, the bank that had issued charge cards to Mr. Harris classified the card he used to pay for the rental car as "wild." The October 18, 1990, designation of the credit card as "wild" by the issuing bank was a request that merchants seize Mr. Harris's credit card because he had exceeded his $1,000 credit limit by $222. By January 28, 1991 Mr. Harris was $1,118 over his credit limit on the credit card.[2] The bank again requested that merchants confiscate that credit card, as well as a second "wild" credit card in Mr. Harris's possession. The issuing bank notified Mr. Harris of the status of his charge cards by letter mailed January 28, 1991, and by telephone on January 30, 1991.

On February 12, 1991, Mr. Harris rented a car from Dollar Rent-A-Car at the Lake of the Ozarks in Missouri, using the second "wild" credit card as payment. Mr. Harris arrived at the Dollar franchise in a four-door Chevrolet Celebrity. Mr. Harris explained to Robert Patton, the franchise owner and manager, that the Celebrity was a friend's car which he needed to return that day. He told Mr. Patton that he would return the Celebrity to his friend and pick up the Dollar car after the agency's office hours. After Mr. Harris left the office, however, Mr. Patton observed him driving the Celebrity to the newly-rented Dollar car, transferring some items from the Celebrity to the Dollar car, and leaving the rental lot in the Dollar car.

Mr. Patton examined the Celebrity and noticed it had been involved in an accident. Upon closer inspection, Mr. Patton observed that the Celebrity was a rental car belonging to Hertz. Mr. Patton then called U.S. Rents It in Jefferson City, Missouri. After speaking with an employee of U.S. Rents It, Mr. Patton called to check the status of the credit card Mr. Harris had used to rent the Dollar car. Based on what he discovered about Mr. Harris's card, Mr. Patton called the police.

Two employees of U.S. Rents It retrieved the Celebrity from the Dollar franchise during the afternoon of February 12, 1991. Later that same afternoon, Mr. Patton saw the car he had rented to Mr. Harris being driven through the Dollar parking lot. Mr. Patton immediately got in his own car and began following the Dollar rental car, using his car phone to contact his office and to instruct one of his employees to call the police. When the rental car pulled into a parking lot, Mr. Patton blocked the rental car in with his own car. Mr. Harris then rolled down his window and inquired, "Where's my car?" and "Is there a problem?" Mr. Patton told him that he had used a bad credit card that would not pay for the rental. At trial, Mr. Patton testified that he could smell alcohol on Mr.

Section 578.150, RSMo.Cum.Supp.1992. All statutory references are to Revised Missouri Statutes 1986, unless otherwise indicated.

**2.** An employee of the issuing bank who worked in the credit card department testified that Mr.

Harris was able to increase the balance on his credit card after the card was classified as "wild" because merchants are not required to check on the status of a credit card if the purchase is under $50.

Harris's breath and that a woman, not Mr. Harris, was driving the Dollar car. Shortly after Mr. Patton blocked the rental car in, the police arrived and arrested Mr. Harris.

Mr. Harris's case was tried to a jury on September 3, 1991. The state presented evidence that Mr. Harris owed $1,863.56 for the rental of the Celebrity from U.S. Rents It in Jefferson City. An employee of U.S. Rents It testified that she was the only person there authorized to extend car rental contracts and that she did not authorize an extension for Mr. Harris. She also stated that when the Celebrity was retrieved, "the right wheel was totally bent in and damaged." The car was later found to have incurred damages of between $800 and $900. Mr. Harris did not testify and presented no witnesses in his defense. The jury found Mr. Harris guilty of the failure to return rental property. On December 11, 1991, the trial court sentenced Mr. Harris as a prior and persistent offender to five years in prison, to be served consecutively to any other sentences he was then serving.

Mr. Harris timely filed a pro se Rule 29.15 motion for postconviction relief. His amended motion alleged in part that he received ineffective assistance of counsel in that his trial counsel failed to investigate and call witnesses to testify that his own car was being repaired at McKay Motors and that he had insurance which covered the rental and damage of the Celebrity while his car was being repaired. Mr. Harris also claimed that his trial counsel was ineffective for failing to object to his being tried while wearing his prison uniform. The motion court denied postconviction relief after holding an evidentiary hearing on Mr. Harris's motion on December 17, 1992. Mr. Harris now appeals the judgments of both the trial court and the motion court.

## I.

Mr. Harris alleges as his first point on appeal that the trial court erred in sustaining the jury's verdict and in sentencing him for the class C felony of failure to return rented personal property. Mr. Harris maintains that the state failed to prove his criminal intent beyond a reasonable doubt in violation of his due process rights as guaranteed by the Missouri and United States Constitutions. He argues that the evidence presented at trial was insufficient to convict him because when viewed in the light most favorable to the verdict, the evidence showed only that he had breached his rental contract with Hertz and that no demand had been made for the return of the rented automobile. Mr. Harris further contends that "[t]he state tried [him], not for his criminal intent, but rather for the fact that a local business had suffered a loss of almost $2,000 as a result of [his] breach of his rental contract."

When considering whether the evidence is sufficient to support a criminal conviction, this court views the evidence and all reasonable inferences drawn from the evidence in the light most favorable to the verdict, rejecting all contrary evidence and inferences. *State v. Purlee*, 839 S.W.2d 584, 587 (Mo. banc 1992). This court neither reweighs the evidence nor determines the reliability of that evidence or the credibility of witnesses. *State v. Neal*, 849 S.W.2d 250, 253 (Mo.App.1993). Rather, an appellate court's review is limited to determining "whether there is sufficient evidence from which a reasonable juror might have found the defendant guilty beyond a reasonable doubt." *Purlee*, 839 S.W.2d at 587.

Section 578.150.1 provides that a person commits the crime of failure to return leased or rented personal property "if, with the intent to deprive the owner thereof, he willfully fails to return leased or rented personal property to the place and within the time specified in an agreement in writing providing for the leasing or renting of such personal property." Viewed in the light most favorable to the verdict, the evidence at trial established that on January 19, 1991, Mr. Harris entered into a lease agreement with U.S. Rents It to rent from Hertz a Chevrolet Celebrity for $39 per day, that Mr. Harris failed to return the car within one week as provided for in the rental contract, and that the contract was never extended. While in Mr. Harris's possession, the Celebrity incurred $800 to $900 worth of damages. Furthermore, Mr. Harris used a credit card that was not honored to pay for the car, and

U.S. Rents It never received any money for either the rental of or the damage to the Celebrity. When renting a second car from Mr. Patton, Mr. Harris claimed the Celebrity belonged to a friend. The evidence established that Mr. Harris failed to return the rented car to the place and within the time specified. Section 578.150.1. Mr. Harris's intent or purpose to deprive U.S. Rents It from the car may be inferred from the "failure to return, as agreed, a substantial arrearage on rental payments and damage to the vehicle," *Kluttz v. State*, 813 S.W.2d 315, 317 (Mo.App.1991), as well as Mr. Harris's payment with a charge card classified by the issuing bank as "wild" for at least three months prior to the rental and his statement to Mr. Patton that the Celebrity belonged to a friend.

■ Mr. Harris argues that U.S. Rents It/Hertz never demanded return of the automobile before his arrest. Section 578.150.2 provides:

It shall be prima facie evidence of the crime of failing to return leased or rented property when a person who has leased or rented personal property of another willfully fails to return or make arrangements acceptable with the lessor to return the personal property to its owner within ten days after proper notice following the expiration of the lease or rental agreement.

Section 578.150.2 does not require that a demand be made in order to prove the crime of failure to return leased or rented personal property. The subsection only pronounces what must be established in order for the state to shift the burden of going forward with the evidence to the accused. *See State v. Malone*, 327 Mo. 1217, 1228–34, 39 S.W.2d 786, 790–93 (Mo.1931) (establishing a prima facie case allows the state to shift the burden of going forward with the evidence to the criminal defendant but does not shift the burden of proof, which remains with the state throughout the trial).

■ Mr. Harris also contends that the state "sought a conviction and imprisonment of [him] as alternative compensation to Hertz." He cites as support for his claim the following portions of the assistant prosecutor's closing argument:

If you're running a rental business and it's getting—it's a huge industry—if you're going to rent somebody a car and they give you a bad piece of plastic, they wreck your car, he doesn't pay you a dime of anything on this piece of paper. You heard [the employee of U.S. Rents It]. Not only did they get this car back wrecked, but there's no money.

This contract reads $1873.56. Right out of business. Might as well take it right out of the till and pitch it into the street. That is not supporting the community. That's not the standard that we want to have.

Mr. Harris correctly notes that the criminal justice system cannot be invoked merely to avoid the trouble and expense of a civil suit. *State v. Morris*, 699 S.W.2d 33, 36 (Mo.App. 1985). However, the prosecutor's argument, to which Mr. Harris made no objection during the trial, does not sustain his contention.

Section 578.150 was enacted to protect owners from renters who fail to return rented property. *State v. Harrison*, 805 S.W.2d 241, 244 (Mo.App.1991). Prosecutors are granted wide latitude in closing argument, such that they may comment on "the prevalence of crime, the necessity of law enforcement as a deterrent to crime and the evil results which might befall society when a jury fails to perform its duty." *State v. Hubbard*, 659 S.W.2d 551, 558 (Mo.App. 1983). In view of the legislative intent behind § 578.150 and the leeway granted prosecutors during closing argument, this court finds the assistant prosecutor's comments to be proper.

There exists in this case sufficient evidence from which a reasonable juror might have found Mr. Harris guilty beyond a reasonable doubt. *Purlee*, 839 S.W.2d at 587. Point one is denied.

## II.

Mr. Harris contends as his second point on appeal that the trial court committed plain error when it overruled his off-the-record pretrial objection to being tried while attired in his jail uniform and the motion court clearly erred in finding that he was not prej-

udiced by his clothing. Mr. Harris claims that the rulings of the trial and motion courts violated his rights to a fair trial and to due process of law as guaranteed by the Missouri and United States Constitutions because the jail uniform "signaled to the jury an unmistakable mark of guilt."

Mr. Harris did not object on the record to being tried while wearing his jail uniform. He also did not mention being tried in his uniform as error in his motion for a new trial. The motion court indicated in its findings of fact and conclusions of law, however, that Mr. Harris's trial counsel made an objection "to the fact that the Movant was in prison clothes during the trial" in the judge's chambers before trial.[3] Mr. Harris now requests plain error review. Rules 29.12(b) & 30.20.

▮▮▮ A prisoner cannot be forced to appear in court wearing identifiable prison clothing, because compelling an accused to display himself so dressed to the jury "disparages the presumption of innocence and impairs a fair trial." *State v. Green*, 674 S.W.2d 615, 622 (Mo.App.1984). Absent such compulsion by the court, however, no constitutional violation results from the appearance by an accused in prison attire before a jury. *Id.; State v. Beal*, 602 S.W.2d 22, 25 (Mo. App.1980).

▮▮▮ The record in this case reveals no evidence that the trial court compelled Mr. Harris to appear before the jury in his jail uniform. There is nothing in the record to indicate that Mr. Harris was not given sufficient notice of the September 3, 1991, trial date, for the trial court's docket sheet indicates that Mr. Harris's case was set for trial on June 17, 1993. Although Mr. Harris's trial counsel apparently made an objection related to Mr. Harris's prison clothing, Mr. Harris's attorney's failure to make a record of this objection leaves this court without knowledge of the basis for that objection. Given the total lack of evidence that the trial court compelled Mr. Harris to appear before the jury wearing his prison uniform and the substantial evidence of Mr. Harris's guilt, as discussed in point one, this court does not find that either manifest injustice or a mis-

carriage of justice has occurred in this case. Rules 29.12(b) & 30.20.

▮▮▮ Nor does this court conclude that the motion court clearly erred in accordance with Rule 29.15(j) in finding that Mr. Harris was not prejudiced by being tried while wearing his jail uniform. Mr. Harris did not present any evidence concerning his apparel during the evidentiary hearing on his Rule 29.15 motion. By failing to present evidence pertaining to this alleged error, Mr. Harris abandoned his postconviction claim of ineffective assistance of counsel regarding this error. *Malady v. State*, 762 S.W.2d 442, 443 (Mo.App.1988). Point two is denied.

### III.

As his third and final point on appeal, Mr. Harris argues that the motion court clearly erred in denying his rule 29.15 motion for postconviction relief. Mr. Harris claims that he received ineffective assistance of counsel in violation of his right to due process of law because his trial attorney failed to investigate and present evidence that at the time he initially rented the Celebrity from U.S. Rents It, his own car was being repaired at McKay Motors in Jefferson City, Missouri and he was covered by a substitute transportation insurance policy.

▮▮▮ This court's review of the motion court's denial of Mr. Harris's Rule 29.15 motion is limited to a determination of whether the motion court's findings of fact and conclusions of law are "clearly erroneous." *Leisure v. State*, 828 S.W.2d 872, 873–74 (Mo. banc), *cert. denied*, —— U.S. ——, 113 S.Ct. 343, 121 L.Ed.2d 259 (1992); *State v. Davis*, 849 S.W.2d 34, 45 (Mo.App.1993); Rule 29.15(j). The findings and conclusions of the motion court are clearly erroneous "only if, after review of the entire record, the appellate court is left with the definite and firm impression that a mistake has been made." *Leisure*, 828 S.W.2d at 874.

▮▮▮ In order to successfully prove ineffective assistance of counsel, a movant must show both (1) that his or her attorney was deficient (i.e., that the attorney did not

---

**3.** The same judge who presided over Mr. Harris's trial heard his postconviction relief motion.

exercise the customary skill and diligence that a reasonably competent attorney would exercise under similar circumstances); and (2) that the movant was prejudiced by his or her counsel's deficiency. *Id.* (citing *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984) and *Sanders v. State,* 738 S.W.2d 856, 857 (Mo. banc 1987)); *Davis,* 849 S.W.2d at 45. In establishing that his or her attorney was deficient, a movant must overcome the strong presumption that the attorney's conduct was proper. *Leisure,* 828 S.W.2d at 874. "To demonstrate prejudice, a movant must establish that there is a reasonable probability that, but for counsel's actions, the result of the trial would have been different." *Id.* at 875. A reasonable probability exists when the likelihood of a different result is sufficient to undermine confidence in the outcome of the trial. *Id.; State v. Foster,* 854 S.W.2d 1, 8 (Mo.App.1993).

▮ To succeed on his claim that counsel was ineffective for failing to investigate a witness or other evidence, Mr. Harris must show: 1) the specific information counsel failed to discover; 2) that a reasonable investigation would have uncovered the information; and 3) that the information, once discovered, would have aided movant by providing him with a viable defense. *Fox v. State,* 819 S.W.2d 64, 66 (Mo.App.1991); *Jenkins v. State,* 788 S.W.2d 536, 540 (Mo.App.1990). At the postconviction hearing, Mr. Harris testified that he had substitute transportation coverage from Metropolitan Life Insurance Company and that, at the time he rented the vehicles, his truck was being repaired at McKay Motors. The state also stipulated to these facts. The prosecutor and motion counsel stated that they had obtained and reviewed documents from the insurance company and repair records from McKay, but these items were not offered or received in evidence at the postconviction hearing.

▮ This court need not determine whether or not Mr. Harris's counsel was deficient because Mr. Harris cannot show he was prejudiced by his counsel's action. *Amrine v. State,* 785 S.W.2d 531, 534 (Mo. banc), *cert. denied,* 498 U.S. 881, 111 S.Ct. 227, 112 L.Ed.2d 181 (1990). Contrary to Mr. Har-

ris's assertion, evidence of Mr. Harris's belief that Hertz would be paid for the rental by his insurance company would not have rebutted the state's evidence that he intended to deprive Hertz of the car by failing to return it on the date specified in the rental contract. Mr. Harris was charged with failure to return rental property, not failure to pay for that property. Section 578.150. While a substantial arrearage on rental payments is one factor from which intent to deprive can be inferred, *Kluttz,* 813 S.W.2d at 317, Mr. Harris's failure to return the car at the agreed upon time, the damaged condition of the car when retrieved, and Mr. Harris's statement to Mr. Patton concerning the ownership of the car indicate an intent or purpose to deprive an owner of rented property, *see id.,* and support the jury's finding of guilt. Furthermore, the existence of a policy of insurance for substitute transportation is not proof that such policy provides coverage for the amounts Mr. Harris owed U.S. Rents It. The evidence at trial was that U.S. Rents It never received any money for the rental or the damage from the insurance company.

Mr. Harris cannot establish a reasonable probability that the outcome of his trial would have been any different had his trial attorney presented evidence that his own car was being repaired and that he believed his insurance would pay for the rental. Because Mr. Harris has not demonstrated that he was prejudiced by his counsel's action, this court finds that the motion court did not clearly err in concluding his trial counsel was effective and in denying his Rule 29.15 postconviction motion. Point three is denied.

The judgments of the trial and motion courts are affirmed.

All concur.