**STATE of Missouri, Appellant,**

v.

**Tamera L. SMITH, Respondent.**

No. 24456.

Missouri Court of Appeals,
Southern District,
Division One.

June 11, 2002.

Motion for Rehearing or Transfer
Denied July 3, 2002.

Application for Transfer Denied
Aug. 27, 2002.

Jeremiah W. (Jay) Nixon, Atty. Gen., Susan L. Brown, Asst. Atty. Gen., Jefferson City, for Appellant.

Emmett D. Queener, Columbia, for Respondent.

ROBERT S. BARNEY, Chief Judge.

The State of Missouri ("State") appeals from a Judgment of Acquittal Notwithstanding the Verdict of the Circuit Court of Greene County in favor of Tamera Smith ("Defendant"). The jury found Defendant guilty of the Class C felony of failing to return rental property, § 578.150, following a jury trial on July 2–3, 2001.[1]

In its sole point on appeal, the State contends that the trial court erred in entering the judgment of acquittal, as previously mentioned, because the State presented sufficient evidence at trial for the jury to convict Defendant of the crime charged. The State maintains "that rea-

---

1. All statutory references are to RSMo 2000, unless otherwise noted.

sonable jurors could have inferred from the evidence that the Defendant purposefully failed to return the rental vehicle with intent to deprive the owner thereof."

■■■ "When reviewing a judgment of acquittal notwithstanding the verdict, we view the evidence in the light most favorable to the jury verdict, disregarding all contrary evidence and inferences." *State v. Richardson,* 22 S.W.3d 753, 755 (Mo. App.2000). "Review of the sufficiency of evidence is limited to a determination of whether the evidence was sufficient for reasonable persons to have found the defendant guilty as charged beyond a reasonable doubt." *State v. West,* 939 S.W.2d 399, 401 (Mo.App.1996); *State v. Couch,* 793 S.W.2d 599, 601 (Mo.App.1990).[2] "Credibility of witnesses and inconsistencies in testimony are for the jury to consider." *West,* 939 S.W.2d at 401.

Viewed from this perspective, the evidence shows that on May 1, 1998, Defendant went to the concern known as Practical Rent–A–Car ("Practical"), located in Springfield, Missouri, accompanied by a Mr. Jeff Powell. Defendant spoke with Mr. Michael Shockley, an employee and manager of Practical, and entered into a written agreement to rent a 1996 Ford Taurus ("Taurus") for one week. The agreement provided that Defendant was renting the Taurus until May 8, 1998. Defendant paid the weekly rental fee of $200.00 plus a safety deposit fee of $300.00 in cash. Defendant then departed the premises in the Taurus. The Taurus was worth somewhere between $10,000.00 and $12,000.00.

On May 7, 1998, according to Mr. Shockley, either Defendant or her boyfriend, Mr. Michael King, came to Practical to extend the rental agreement for an additional week. Mr. Shockley testified he received $200 as payment for the additional week from either Defendant or Mr. King. The Taurus was then due back on May 14, 1998. However, the Taurus was not returned to Practical on May 14, 1998, nor did Defendant contact Practical prior to May 14, 1998, to request another extension.

On May 16, 1998, after an employee of Practical had made contact with either Defendant or Mr. King concerning the vehicle, she and Mr. King returned to Practical. She informed Mr. Shockley that Mr. Powell had taken the keys to the Taurus without Defendant's permission on May 7, 1998, and had departed with the Taurus. Mr. Shockley asked Defendant if she had tried to call the police. She replied that she had not and would like to try and get the Taurus back from Mr. Powell without involving the police.[3] Defendant left Practical without notifying the police. Mr. Shockley then called the police and reported the Taurus stolen.

Some time after May 16, 1998, Mr. Shockley received a phone call from an unidentified individual, someone other than

2. "Where a jury returns a verdict of guilty but the trial court thereafter enters a judgment of acquittal, an appeal by the prosecution is permitted." *West,* 939 S.W.2d at 400. "The Double Jeopardy Clause does not prohibit an appeal by the prosecution unless a retrial or 'further proceedings of some sort, devoted to the resolution of factual issues going to the elements of the offense charged' would be required in the event the prosecution is successful in its appeal." *Id.* at 401(quoting *Smalis v. Pennsylvania,* 476 U.S. 140, 145–46,

106 S.Ct. 1745, 1749, 90 L.Ed.2d 116 (1986)). In this instance, upon remand no retrial or further resolution of factual issues is warranted and the Double Jeopardy Clause is not implicated. *West,* 939 S.W.2d at 401.

3. Defendant also admitted that she had not attempted to call her own vehicle insurance carrier which she had named in the rental agreement.

Defendant, wanting to extend the terms of the rental contract on the Taurus. Four days later, on May 20, 1998, Mr. Shockley received $500 to extend the rental agreement to May 31, 1998. The record is silent as to whom may have brought in this additional sum of money.

Mr. Shockley testified that a few days thereafter, between May 21 and May 30, 1998, he received a phone call from Defendant advising him that she was with Mr. Powell and they were in Oklahoma City on their way back from Arizona and that "they had found the car." According to Mr. Shockley, Defendant also related that "she was going—she was at or was going to go to the hospital." Whereupon, Mr. Shockley advised Defendant that the Taurus was due back on May 31, 1998. He also advised Defendant that no more extensions would be allowed on the rental.

The Taurus was not returned on May 31, 1998. Nor was it returned at anytime in 1998. Defendant had no further contacts with Practical, despite its employees' repeated and failed attempts to contact her at her residence and by attempting to contact persons named in a list of references she had submitted at the time of rental.

Defendant testified that she had not given Mr. Powell permission to take the Taurus. She further testified that after speaking with Mr. Shockley on May 16, 1998, to advise that Mr. Powell had taken the Taurus, she did not speak with Mr. Powell again. She denied that she was with Mr. Powell in Arizona or Oklahoma City, and denied calling Mr. Shockley to relate that information to him. She further denied that she ever made any payments to extend the rental contract, including the $200.00 on May 8, 1998, and the $500.00 on May 20, 1998.

Subsequent to the close of evidence, Defendant filed a motion for acquittal at the close of evidence, however, the trial court denied this motion. The jury returned a verdict of guilty against Defendant for failure to return rental property. Prior to sentencing, Defendant filed a motion for new trial that included a renewal of her motion for judgment of acquittal at the close of the evidence. On August 27, 2001, the trial court entered a "Judgment of Acquittal Notwithstanding the Verdict" stating that "after further consideration and a review of its notes that no reasonable jury could have found the defendant guilty beyond a reasonable doubt...."

 "A person commits the crime of failing to return leased or rented property if, with the intent to deprive the owner thereof, he [or she] purposefully fails to return leased or rented personal property to the place and within the time specified in an agreement in writing." § 578.150.1; *State v. Harris,* 868 S.W.2d 203, 206 (Mo. App.1994). Section 578.150.2 states, in pertinent part:

> It shall be prima facie evidence of the crime of failing to return leased or rented property when a person who has leased or rented personal property of another willfully fails to return or make arrangements acceptable with the lessor to return the personal property to its owner's place of business within ten days after proper notice following the expiration of the lease or rental agreement, *except that if the motor vehicle has not been returned within seventy-two hours after the expiration of the lease or rental agreement, such failure to return the motor vehicle shall be prima facie evidence of the intent of the crime of failing to return leased or rented property.*

§ 578.150.2 (emphasis added). "Section 578.150.2 does not require that a demand be made in order to prove the crime of

failure to return leased or rented personal property." *Harris*, 868 S.W.2d at 207. "The subsection only pronounces what must be established in order for the state to shift the burden of going forward with the evidence to the accused." *Id.* "[E]stablishing a prima facie case allows the state to shift the burden of going forward with the evidence to the criminal defendant but does not shift the burden of proof, which remains with the state throughout the trial." *Id.; see State v. Malone*, 327 Mo. 1217, 1228–34, 39 S.W.2d 786, 790–93 (Mo.1931).

■ Here, viewing the evidence in a light most favorable to the jury verdict, as we must, we conclude that there was enough evidence shown to establish that Defendant committed the crime of failing to return rental property. As previously set out, Mr. Shockley testified at trial that Defendant was the person who entered into the written agreement for a week's rental of the Taurus on May 1, 1998, and that either Defendant or her boyfriend, Mr. King, had extended the rental contract for an additional week past May 8, 1998.

Mr. Shockley also related that Defendant showed up at Practical on May 16, 1998, to report that Mr. Powell had taken the keys to the Taurus and had driven off in the vehicle without her permission *some nine days earlier on May 7, 1998.* Defendant admitted she went to the offices of Practical only after Practical had contacted her and Mr. King inquiring about the vehicle. Despite this, Defendant did not wish to call the police to report the vehicle as missing, but wanted to try and locate the Taurus on her own. Mr. Shockley testified that after another payment had been made to extend the rental agreement to May 31, 1998, Defendant had called him to

advise that she was on her way back from Arizona with Mr. Powell and was in Oklahoma City. At that time, Mr. Shockley informed Defendant that the Taurus was due back May 31, 1998, and that no further extensions would be permitted. The Taurus was not returned to Practical on May 31, 1998, or at any time during 1998.[4] Furthermore, despite repeated attempts by employees of Practical to contact her, Defendant had no further contact with Practical.

Mr. Shockley's testimony established that Defendant was on notice that the Taurus was due back on May 31, 1998. It was not returned in 1998, nor did Defendant contact Practical to offer any further explanation as to the whereabouts of the Taurus. Although Defendant denied ever speaking with Mr. Shockley after May 16, 1998, or telling him that she was with Mr. Powell in Oklahoma City, the "[c]redibility of witnesses and inconsistencies in testimony are for the jury to consider." *West*, 939 S.W.2d at 401.

■ The State made a prima facie showing that Defendant had intentionally failed to return the rented Taurus within seventy-two hours after May 31, 1998. The jury did not have to accept Defendant's version of the circumstances surrounding the missing vehicle. From the foregoing the jury could have reasonably inferred Defendant's guilt. Intent or purpose may be inferred from circumstances which include failure to return a vehicle. *See Kluttz v. State*, 813 S.W.2d 315, 317 (Mo.App.1991). Sufficient evidence was presented from which a reasonable jury could have found Defendant guilty of failure to return rental property beyond a reasonable doubt. *Harris*, 868 S.W.2d at

---

4. Appellant's brief alludes to the vehicle being recovered in 1999. The record is not clear as to when the car was recovered save for the fact that it was not recovered by Practical in 1998.

207. The trial court erred in granting Defendant's motion for Judgment of Acquittal Notwithstanding the Verdict. *West*, 939 S.W.2d at 403. The State's point is well taken.

The judgment of acquittal is reversed, and the cause is remanded to the trial court for purposes of reinstating the guilty verdict of the jury against Defendant and for further proceedings as required by law. *See West*, 939 S.W.2d at 403.

SHRUM, P.J., and MONTGOMERY, J., concur.