**William Stafford REED,**
**Movant–Appellant,**

v.

**STATE of Missouri, Respondent.**

**No. WD 41118.**

Missouri Court of Appeals,
Western District.

July 18, 1989.

Motion for Rehearing and/or
Transfer to Supreme Court Denied
Aug. 29, 1989.

Application to Transfer Denied
Nov. 14, 1989.

Before BERREY, P.J., and
MANFORD and NUGENT, JJ.

MANFORD, Judge.

Appeal from the denial, after evidentiary hearing, of a Rule 27.26 motion for post-conviction relief. The judgment is affirmed.

Movant raises two points on appeal which charge, in summary, that the hearing court erred in (1) failing to vacate the first degree (felony) murder conviction in order to remedy a double jeopardy violation, and (2) denying post-conviction relief by finding that movant's guilty plea was

voluntarily made, and movant was not denied the effective assistance of counsel.

The pertinent facts are as follows:

Movant was originally charged with capital murder under § 565.001, RSMo 1978, and kidnapping, a felony under § 559.240, RSMo 1969. On the date scheduled for trial, he agreed as part of a plea bargain to plead guilty to a reduced charge of first degree (felony) murder, § 565.003, RSMo 1978, and to the kidnapping charge.

Movant appeared at both guilty plea hearings with his attorney, David V. Bear, III. Movant understood that the penalties for capital murder were either death or life imprisonment without parole for 50 years. Movant asserted that he was forced into participating in the murder and that his brother had threatened to kill him if he did not cooperate. Movant stated that he understood the concept of accessory liability. Movant informed the court that his decision to plead guilty to first degree (felony) murder was in part based on his family's desire that he receive a sentence from which he could be paroled sooner than if he was convicted of capital murder. In exchange for his guilty plea to first degree (felony) murder, movant was promised a concurrent sentence of ten-years imprisonment upon his guilty plea to the kidnapping charge.

During the plea hearing, the court asked movant whether on the night of March 9, 1978, he, acting with his brother, took the life of Larry C. Hughes, Jr. It was established that movant and his brother kidnapped Hughes and took him in the back of a station wagon to a place where he was killed. Movant stated that his brother killed Hughes by beating Hughes with a jack, and that his brother threatened to kill him if he tried to stop him.

Movant claimed that he knew nothing about any witnesses other than his brother, and that there were no witnesses he wanted counsel to contact. Movant testified he was not threatened or forced to plead guilty by his attorney or by any law enforcement officer. The only thing he requested that counsel did not do was to have a private psychiatrist give him a second mental evaluation.

Movant stated that he understood that by pleading guilty he waived his right to challenge the admissibility of a statement given to a sheriff in Randolph County. The court ascertained through questioning that movant understood that he also waived his right to a trial by jury and eliminated the possibility of a jury assessing his punishment. Movant finally stated that he was pleading guilty because Bear's motion for a continuance had been denied, because he felt he had no choice, and because his family did not want him to go to trial. Movant stated that no one had forced him to make that decision.

After determining that movant's guilty plea was voluntarily, intelligently, and understandingly entered, the court sentenced movant to a term of life imprisonment on the first degree (felony) murder charge. Movant also entered a plea of guilty to the kidnapping charge and received a sentence of ten-years imprisonment. The sentences were ordered to be served concurrently. When accepting the guilty plea, the court informed movant that even though a bargain was made regarding the first degree (felony) murder charge, he could still have a trial. Movant stated that he pled guilty and did not want a trial.

Movant filed a pro se motion for post-conviction relief under Rule 27.26 in December of 1987, more than nine years after his convictions. He alleged that he had been coerced into making involuntary statements after his arrest and he received ineffective assistance of counsel at his guilty plea hearings.

An amended motion was filed by appointed counsel in May of 1988. The amended motion expanded the claims of ineffective assistance of counsel alleged in the pro se motion. Ineffective assistance of counsel was premised on counsel's failure to confer with movant enough to prepare a defense, failure to arrange a second mental examination, failure to inform movant of the defense of duress, failure to inform movant of the range of punishment for first degree murder or manslaughter, failure to pursue a motion to suppress movant's statement, and failure to prepare adequately for trial.

The amended motion also claimed that movant's plea was the product of coercion and duress, since counsel refused to proceed with a motion to suppress movant's statement, because counsel threatened movant's family and enlisted them to persuade him to plead guilty, because counsel was not prepared for trial, and because movant was physically beaten while in custody. Additionally, movant's plea was claimed to be involuntary because he equivocated during the plea. The motion finally alleged that movant was subjected to double jeopardy by virtue of being convicted of both felony murder and the underlying felony of kidnapping.

An evidentiary hearing was held on the motion on May 26, 1988. Movant testified that his attorney met with him several days before the date scheduled for trial to discuss offers made by the prosecuting attorney, if movant would testify against his brother. Movant rejected the offers and wanted to go to trial. Movant testified that his attorney said he could do nothing more for his case.

When movant arrived at the courthouse on the date scheduled for trial, his grandmother and friends were assembled. His grandmother was crying and urged him to plead guilty so he could be released on parole in about 15 years. Movant insisted he would not plead guilty to the felony murder charge unless he was assured a concurrent sentence on the kidnapping charge. Movant explained that he and his attorney used the judge's chambers to telephone the prosecuting attorney in the kidnapping case. The prosecuting attorney agreed to the concurrent sentence. Thereafter, the guilty pleas were entered.

Movant testified during the evidentiary hearing that law enforcement officers hit him with a nightstick and put him in jail detention before he entered his guilty pleas. When asked if his experience in jail influenced his decision to enter a plea of guilty, movant stated that it was a trying point and he knew he wanted to get out of jail, so it was a factor in his decision.

Movant claimed that he started out with confidence in his attorney, but had none by the end of the case. Movant wanted a second mental evaluation, but Bear did not know if a judge would allow it. Movant did not feel comfortable going to trial with Bear because Bear indicated there was nothing he could do for him. Bear told movant that the evidence against him was strong. Movant did not believe that Bear was prepared for trial, even though Bear had done all movant wanted, except for the second mental evaluation. Movant claimed that Bear never discussed with him the defense of duress. Movant, however, could not remember telling Bear that his brother threatened him during commission of the crimes.

Movant testified that he gave a written statement to the Howard County Sheriff three days after his arrest, and another sheriff told him he would only receive a five-year sentence if he stood by the statement. Movant asked Bear to try to exclude the statement. Movant testified that the fact that no motion had been made to suppress the statement influenced his decision to plead guilty. On cross-examination, movant recalled that a motion to suppress was made at the time of the preliminary hearing, testimony taken at that time, and the motion was overruled. He also agreed that, other than the written statement, he made numerous oral statements about the homicide to persons whom the state could call as witnesses.

Movant further testified at the evidentiary hearing that he understood that by pleading guilty to the lesser charge of first degree (felony) murder and getting a life sentence he had the possibility of being paroled. That understanding was a major consideration in entering the pleas.

Movant testified that Bear talked to all the witnesses that movant desired. In fact, Bear discovered one witness through independent investigation whom movant did not want mentioned at trial. That particular witness was endorsed on the state's information as a possible witness against movant.

Movant further asserted at the evidentiary hearing that he was not attacking his conviction for kidnapping, as he had specifi-

cally requested a concurrent sentence on that charge. Additionally, movant stated that the kidnapping charge had been "commutated".

Attorney Bear testified at the evidentiary hearing that he had extensive experience in handling murder cases. He met with movant about ten times before movant pled guilty. He filed a motion to suppress movant's statement to the law enforcement authorities. The motion was overruled, but Bear considered this statement just an average problem for the defense because the state had several witnesses to whom movant admitted that he and his brother killed Hughes. The testimony of one witness made it appear that movant, not his brother, was the prime mover in the murder.

Bear knew movant was mistreated in jail, but also stated that movant had not been beaten to get him to plead guilty. Bear did not believe movant would receive the death penalty if convicted of capital murder, but did believe that his best course of action would be to plead guilty to first degree (felony) murder for a life sentence. Bear stated that movant understood he could get a sentence of life without parole for 50 years if found guilty of capital murder and that, although movant had reservations about pleading guilty, he said he would do so. Bear commented that movant wavered somewhat during his plea. Although movant never said he did not want to plead guilty, he had a hard time admitting anything about the offense. Bear further stated that he was prepared for trial. He had investigated the viability of a duress defense but found it unworkable. The testimony of a witness who was present during the killing did not support the defense because the testimony would have indicated that the movant was a voluntary participant in the homicide. Movant knowingly concealed the identity of his witness from his attorney.

Bear testified he never tells a client that there is nothing he can do. In a mental examination, movant was found mentally competent under the statutory requirements.

After the hearing, the court entered findings of fact and conclusions of law. The court found that movant's guilty pleas were voluntarily, knowingly and intelligently entered. The court further found that movant was subjected to double jeopardy when he entered his pleas of guilty to both first degree (felony) murder and the underlying felony of kidnapping and, thus, vacated the kidnapping sentence. The court denied the motion to vacate the first degree (felony) murder conviction. This appeal followed.

■ In his first point on appeal, movant contends that the hearing court erred in failing to vacate his first degree (felony) murder conviction, instead of the conviction on the underlying felony of kidnapping, in order to remedy the double jeopardy violation because he had completely served his ten-year sentence for kidnapping when the sentence thereon was vacated. Movant's first point is taken up and, after full consideration, is found to be without merit and ruled against him.

Movant is correct that the Double Jeopardy Clause of the Fifth Amendment as made applicable to the states by the Fourteenth Amendment protects not only against a second trial for the same offense, but also against multiple punishments for the same offense. See *Whalen v. U.S.*, 445 U.S. 684, 100 S.Ct. 1432, 63 L.Ed.2d 715 (1980).

Not until the Missouri Supreme Court's initial decision in *State v. Morgan*, 592 S.W.2d 796, 801 (Mo. banc 1980) was it held that the imposition of two sentences upon a defendant convicted of both felony murder and the underlying felony posed a violation of double jeopardy rights. The United States Supreme Court took up and remanded the *Morgan* case to the Missouri court with directions to reconsider the appeal in light of the recent decision in *Whalen v. United States*, 445 U.S. 684, 100 S.Ct. 1432, 63 L.Ed.2d 715 (1980). *See State v. Morgan*, 592 S.W.2d 796 (Mo. banc 1980), *vacated and remanded with directions*, 449 U.S. 809, 101 S.Ct. 56, 66 L.Ed.2d 12 (1980), *orig. op. aff'd*, 612 S.W.2d 1 (Mo. banc 1981). *Whalen* instructed that the ques-

tion of whether punishments imposed by a court after a defendant's conviction upon criminal charges are unconstitutionally multiple cannot be resolved without determining what punishment the Legislative Branch has authorized. *Whalen*, 445 U.S. at 688, 100 S.Ct. at 1436.

While *Morgan v. State* was pending before the United States Supreme Court, the Missouri Supreme Court decided *State v. Olds*, 603 S.W.2d 501 (Mo. banc 1980). The defendant in *Olds* claimed he was impermissibly sentenced to separate punishments for first degree (felony) murder, § 565.003, RSMo 1977, and the underlying felony of kidnapping, § 559.240, RSMo 1969. This claim was addressed in light of the *Whalen* decision. The analysis in *Olds* surveyed the statutory law existing at the time defendant's sentence was pronounced. The court stated:

> Sections 565.003 (first degree murder) and 559.240 (kidnapping) do not contain a legislative intent or directive that a defendant may be separately punished if one offense is determined to be a lesser included of the other. Further, nothing elsewhere in the Missouri Criminal Code *then existing*, indicates an intent on the part of the Missouri General Assembly to allow a separate punishment for one offense in another. (Emphasis added).

*Olds*, 603 S.W.2d at 510.

The court concluded that it could not be demonstrated that the Missouri legislature intended to allow the court to separately punish the defendant in *Olds* both for felony murder and the underlying felony. Therefore, in order to cure the double jeopardy violation, the conviction for kidnapping was vacated. *Id.* The conviction for felony murder was affirmed.

A footnote to the above-quoted text is of key importance in analyzing multiple punishment cases, such as movant's, which arise after revisions to the state criminal code. The supreme court in *Olds* added the following footnote immediately after the above emphasized words, "*then existing*":

> 3. Since the date of the commission of the offense in this case, the Missouri

General Assembly enacted § 556.041, RSMo 1978, effective 1–1–79, which provides limitation on conviction for multiple offenses.

*Olds*, 603 S.W.2d at 510.

Thus, although the statutory law had changed from the time the defendant committed the murder and kidnapping offenses to the time when the court reviewed his sentences, the court analyzed the constitutionality of the sentences by referencing the previously existing statutory law—that in effect when the offenses were committed and the sentences pronounced. The newly enacted statute expressing a legislative intent to prohibit courts from convicting a person of more than one offense, if one is included in the other, was not applicable under these circumstances.

In reconsidering *State v. Morgan* after remand, the Missouri Supreme Court readopted its earlier opinion that the imposition of two sentences upon a defendant convicted of both felony murder and the underlying felony violated double jeopardy rights. *State v. Morgan*, 612 S.W.2d at 801. The court affirmed the holding of *State v. Olds*, stating that the Missouri Legislature did not intend, by the enactment of § 565.003, to allow separate and cumulative punishments for both first degree (felony) murder and the underlying felony. *Id.* The supreme court's opinion drew attention to footnote 3 in *Olds*, explaining that the issue had since been addressed by the legislature which placed a statutory limitation on convictions for multiple offenses, effective January 1, 1979. *Id.*

In sum, the law of *State v. Olds* and *State v. Morgan* controls the disposition of this appeal. This court reviews the constitutionality of movant's sentences in light of the statutory law existing at the time movant was sentenced. All subsequent changes in the Missouri Criminal Code are inapplicable.

The hearing court did not err in finding that movant's multiple sentences for first degree (felony) murder, § 565.003, RSMo 1978, and kidnapping, § 559.240, RSMo 1969, violated movant's double jeopardy

rights. This finding is in complete harmony with *State v. Olds*, which involved identical statutory violations.

■ This court rejects the State's argument that the movant waived his double jeopardy claim by pleading guilty. Although a plea of guilty waives all nonjurisdictional defects and defenses, a claim of double jeopardy is viewed as jurisdictional because its practical result is to prevent a trial from taking place. *State v. Cody*, 525 S.W.2d 333, 335 (Mo. banc 1975). Therefore, a claim of double jeopardy cannot be waived by a plea of guilty, an agreement or a stipulation and, hence, can be raised for the first time on appeal. *White v. State*, 694 S.W.2d 825, 827 (Mo.App.1985). Such a jurisdictional issue may also be raised in a Rule 27.26 motion. Movant's guilty pleas, therefore, do not bar his claim that a court may not constitutionally punish him twice for the same offense. See also *Menna v. New York*, 423 U.S. 61, 66, 96 S.Ct. 241, 242, 46 L.Ed.2d 195 (1975), citing *Blackledge v. Perry*, 417 U.S. 21, 30, 94 S.Ct. 2098, 2103, 40 L.Ed.2d 628 (1974).

■ This court considers as mandatory authority the Missouri Supreme Court decision of *State v. Cody* which views double jeopardy as a jurisdictional defect not subject to waiver. See *Harris v. State*, 577 S.W.2d 140, 141 (Mo.App.1979). This court acknowledges the existence of appellate opinions from other districts stating that double jeopardy is a personal privilege which may be waived if not timely raised during the principal proceeding, but this court does not consider these opinions as mandatory.

This court also rejects the State's argument that the recent case of *United States v. Broce*, —— U.S. ——, 109 S.Ct. 757, 102 L.Ed.2d 927 (1989) holds that a plea of guilty is foreclosed to attack on double jeopardy grounds. Rather, the United States Supreme Court in that case recognized that although, generally, a voluntary plea of guilty bars a double jeopardy claim, there are exceptions where on the face of the record the court had no power to enter the conviction or impose the sentence. *United States v. Broce*, 109 S.Ct. at 762

and 765, citing *Blackledge, supra*, and *Menna, supra.*

Furthermore, the State offers no authority for the argument that a guilty plea based upon a plea bargain has greater preclusive effect than a guilty plea that is not. The *Broce* opinion specifically avoided consideration of this issue. *United States v. Broce*, 109 S.Ct. at 760.

■ Finally, this court further finds that the hearing court did not err in remedying the double jeopardy violation by vacating the shorter, ten-year sentence for the kidnapping conviction rather than vacating, as urged by the movant, the life sentence for first degree (felony) murder. Movant's sentences were ordered to run concurrently. The record contains evidence that the lesser, ten-year sentence for kidnapping had been served and satisfied before the date on which the hearing court ordered it vacated. Movant, therefore, argues that the court was without jurisdiction to vacate that sentence and was required to vacate the life sentence and release him from confinement. We reject this argument, as did the hearing court.

In situations where a defendant's double jeopardy rights have been violated by the imposition of multiple sentences for convictions of both first degree (felony) murder and an underlying felony, Missouri courts have affirmed the remedy of vacating the lesser sentence on the underlying felony and leaving intact the greater sentence for felony murder. See *State v. Evans*, 660 S.W.2d 433, 435 (Mo.App.1983); *Williams v. State*, 646 S.W.2d 848 (Mo.App.1982); *State v. Clark*, 615 S.W.2d 55 (Mo. banc 1981); and *State v. Olds*, 603 S.W.2d 501 (Mo. banc 1980).

A factor present in movant's case of illegally imposed concurrent sentences, but not present in the above-cited Missouri cases, is the complete satisfaction of the lesser sentence for the underlying felony at the time that sentence was vacated. The hearing court correctly ruled, however, that the presence of this factor does not require vacation of the concurrent life sentence on the first degree (felony) murder

conviction. Missouri courts have not yet considered the precise issue presented in movant's argument.

However, in the very recent decision of *Jones v. Thomas*, —— U.S. ——, 109 S.Ct. 2522, 105 L.Ed.2d 322 (1989), the United States Supreme Court addressed the constitutional question of what remedy is required to cure a violation of double jeopardy rights caused by multiple punishments imposed for the same offense. The defendant, Larry Thomas, was convicted by a Missouri circuit court of both first degree (felony) murder and the underlying felony of attempted robbery. He was sentenced to consecutive terms of life imprisonment for the felony murder conviction and 15 years for the underlying felony conviction, with the 15-year sentence ordered to run first. The Eastern District of the Missouri Court of Appeals affirmed the conviction on direct appeal. *State v. Thomas*, 522 S.W.2d 74 (Mo.App.1975).

After considering a post-conviction motion brought under Rule 27.26, the circuit court vacated Thomas' attempted robbery conviction and the corresponding 15-year sentence on the premise that Thomas could not be required to serve both sentences pursuant to the rule in *State v. Olds*, 603 S.W.2d 501 (Mo. banc 1980). By this point in time, the term of the 15-year sentence had legally ended as it was commuted by the Governor of Missouri. Consequently, the trial court credited the entire time of imprisonment against the life sentence Thomas was serving for the felony murder conviction. The Eastern District affirmed the order vacating the shorter sentence for the underlying felony and leaving intact the conviction and sentence for felony murder. *Thomas v. State*, 665 S.W.2d 621 (Mo.App.1983). The appellate court rejected the argument that Thomas was entitled to immediate release because he had completed the 15-year sentence before it was vacated by the circuit court. The appellate court reasoned that Thomas was not prejudiced because the entire time of imprisonment was credited against the longer life sentence.

Thomas next sought a federal writ of habeas corpus. The United States District Court for the Eastern District of Missouri denied relief, holding that Thomas had not suffered a double jeopardy violation because he had not been subjected to greater punishment than intended by the legislature. The Eighth Circuit Court of Appeals reversed and remanded with instruction to issue the writ. *Thomas v. Morris*, 816 F.2d 364 (8th Cir.1987). The federal court opined that the Missouri circuit court had no authority to vacate the sentence on the underlying felony because satisfaction of the alternative punishment ended the power of the court to punish. Once Thomas completed one of the two sentences that could have been imposed by law, he could not be required to serve any part of the other.

The United States Supreme Court recently reversed the opinion of the Eighth Circuit which ordered Thomas's unconditional release. *Jones v. Thomas*, —— U.S. at ——, 109 S.Ct. at 2525 (1989). The Supreme Court held that the Missouri circuit court's remedy of altering Thomas's sentence to a single term for felony murder with credit for time served fully vindicated Thomas' double jeopardy rights. *Id.* at ——, 109 S.Ct. at 2526. Thomas now stands convicted of felony murder alone, and his continued confinement under the single sentence imposed for that crime is not double jeopardy. *Id.* The Court explained that in a multiple punishment context, the Double Jeopardy Clause seeks to protect a limited interest ensuring that the total punishment does not exceed that authorized by the legislature. *Id.* In restricting the application of precedents regarding alternative sentences of different types (fine and imprisonment), the Court noted that in cases involving multiple prison sentences, crediting time served under one prison sentence against the term of another has long been an accepted practice. *Id.* at ——, 109 S.Ct. at 2527. Moreover, the court added that where *concurrent* sentences are imposed, the unlawful imposition of two sentences may be cured by vacating the shorter of the two sentences, even where it has been completed. *Id.* at

——, 109 S.Ct. at 2528, citing *Hardy v. United States*, 292 F.2d 192 (8th Cir.1961), and *United States v. Leather*, 271 F.2d 80 (7th Cir.1959), *cert. denied*, 363 U.S. 831, 80 S.Ct. 1602, 4 L.Ed.2d 1525 (1960).

Accordingly, this court holds that the hearing court's remedy of vacating movant Reed's ten-year sentence for the conviction of the underlying felony of kidnapping and leaving intact the life sentence for the conviction of first degree (felony) murder fully vindicated movant Reed's double jeopardy rights. Movant Reed now stands convicted only of first degree (felony) murder and his continued imprisonment under the single sentence imposed for the crime does not violate his double jeopardy rights. The Constitution does not require that sentencing should be a game in which a wrong move by the judge means immunity for the prisoner. *Jones v. Thomas*, —— U.S. ——, 109 S.Ct. at 2528 (1989), citing *Bozza v. United States*, 330 U.S. 160, 166–67, 67 S.Ct. 645, 648–49, 91 L.Ed. 818 (1947). A convicted murderer sentenced to a term of life plus ten-years imprisonment, running concurrently, should not be allowed to delay and manipulate the filing of his Rule 27.26 motion for post-conviction relief for ten years in an attempt to satisfy the lesser sentence and gain immunity from the life sentence. The sporting game approach to sentencing is rejected because it clearly goes against the intention of the sentencing court to impose the maximum life sentence for the first degree (felony) murder conviction.

Movant's first point is ruled against him.

■ In his second point on appeal, movant contends that the hearing court erred in finding that movant's pleas were made voluntarily, knowingly or intelligently and he was not denied effective assistance of counsel. Movant claims that his attorney should have known that the pleas were entered in response to the urging of his grandmother and friends who feared that a jury would convict movant of capital murder. The record reflects that movant's decision to plead guilty was in part influenced by the urging of his grandmother and friends, but the encouragement of relatives or friends does not constitute legal coercion which would entitle movant to a withdrawal of his guilty pleas after sentencing. *Brown v. State*, 755 S.W.2d 414, 416 (Mo. App.1988); *State v. Maloney*, 434 S.W.2d 487, 494 (Mo.1968).

■ The movant has not established by the preponderance of the evidence that he is entitled to relief because his guilty pleas were involuntarily entered or his attorney was ineffective. Rule 27.26(f). This court's review of the guilty plea transcript and record of the evidentiary hearing confirms the hearing court's determination that movant's guilty pleas were entered voluntarily, knowingly and intelligently. The record also refutes any claim of ineffective assistance of counsel in entering the guilty pleas. This court cannot say that the findings and judgment of the hearing court were clearly erroneous. Rule 27.-26(j).

Movant's second point is ruled against him.

Judgment affirmed.

All concur.