STATE of Missouri, Respondent,

v.

Lance POUNDERS, Appellant.

Lance POUNDERS, Appellant,

v.

STATE of Missouri, Respondent.

Nos. 19220, 20144.

Missouri Court of Appeals,
Southern District,
Division One.

Jan. 10, 1996.

Ellen H. Flottman, Office of the State Public Defender, Columbia, for appellant.

Jeremiah W. (Jay) Nixon, Attorney General, Christine M. Kocot, Asst. Atty. Gen., Jefferson City, for respondent.

MONTGOMERY, Presiding Judge.

A jury convicted Lance Pounders (Defendant) of murder in the second degree, § 565.021.1(1).[1] He was sentenced to life imprisonment. Following his conviction, Defendant filed a Rule 29.15 motion which the trial court denied after an evidentiary hearing.

Defendant appeals the judgment of conviction in his criminal case (No. 19220) and the order denying his Rule 29.15 motion (No. 20144). Pursuant to Rule 29.15(*l*), we consolidate the appeals.

### No. 19220

In his sole allegation of error in this appeal, Defendant contends the trial court erred in refusing to instruct on the affirmative defense of defense of another because the jury could reasonably have found from the evidence that Defendant "killed Travis McDowell in defense of his girlfriend's son, Jeremy Liday...."

Because Defendant does not challenge the sufficiency of the evidence, we recite only the evidence necessary for consideration of Defendant's point. In doing so, we view the evidence and all its reasonable inferences in the light most favorable to the verdict, disregarding any evidence or inferences to the contrary. *State v. Morovitz*, 867 S.W.2d 506, 508 (Mo. banc 1993).

The evidence reveals that Defendant and Kathleen Liday had lived together for approximately eight years. Although Defendant moved alone to a mobile home in September of 1992, he continued a relationship with Kathleen. Jeremy Liday, Kathleen's 18-year-old son, lived with her and Defendant and continued living with her after Defendant moved out. Jeremy worked for Defendant in his roofing business and thought of him as a father.

Prior to 1993, Jeremy and Travis McDowell became involved in a consensual homosexual relationship. During the last week of January 1993, Jeremy told his mother about his relationship with Travis. She was shocked and surprised. After Defendant learned of Jeremy's disclosure, he talked less with Jeremy and appeared to be "standoffish."

On January 30, 1993, Jeremy and Defendant were visiting in the home of Defendant's sister when Travis "showed up there." After Jeremy and Travis made dinner plans for that evening, Defendant became in a hurry to leave. Defendant then dropped Jeremy off at his mother's apartment.

Kathleen agreed to loan Jeremy her car for the evening if he would take her to Defendant's mobile home. On the way they picked up Travis at approximately 6:30 p.m., arriving at Defendant's mobile home shortly thereafter. Kathleen, Jeremy, and Travis entered Defendant's mobile home and the three of them sat down on a couch. Defendant sat in a chair facing them.

Jeremy testified that no argument ensued nor did they discuss Jeremy's and Travis's homosexual relationship. Soon after Kathleen sat down, she arose and walked toward a back bedroom. While facing her, Jeremy began asking when she wanted her car returned. At this time he heard a "loud pop," turned around and saw Defendant standing over Travis with a roofing hammer in hand. Defendant then hit Travis on the head with the hammer and he "shot up stiff." Jeremy testified that Travis did not threaten or attack Defendant.

Defendant then called for Kathleen. She came back into the living room and told Jeremy to go back to her apartment. According to Jeremy, his mother did not act surprised or scared.

Jeremy returned to the apartment around 7:15 p.m. He did not call the police. Defendant and Kathleen arrived there between 11:00 and 11:30 p.m. Kathleen told Jeremy to keep quiet about the incident.

Jeremy returned to Defendant's mobile home a few days later. He observed that a section of carpet was missing from the living room floor, part of the wall behind the couch had been cut out, and part of the upholstery was missing from the couch and a chair.

---

1. Statutory references are to RSMo 1986 unless otherwise indicated.

On February 6, 1993, hunters found Travis's body in a wooded area. An autopsy revealed he had multiple blunt force head wounds and a wound to his chest which tore a hole in his heart. The pathologist testified that the wounds were made by an instrument consistent with the make-up of a roofing hammer.

Sergeant Tom Martin of the Missouri Highway Patrol interviewed Jeremy on February 7, 1993. Jeremy told him that Defendant killed Travis. Later, police officers searched Defendant's mobile home and automobile. Blood samples taken from the mobile home and automobile matched Travis's blood.

Only Defendant testified in his defense. Defendant's summarized testimony follows:

Jeremy told me that he was contemplating suicide because Travis had raped and beaten him while holding him against his will in various motel rooms. Jeremy said Travis told him not to tell anyone or he would be killed. Furthermore, Travis told Jeremy if he did not cooperate with him that Travis would rape Kathleen.

When Travis, Jeremy and Kathleen came to my mobile home I asked Travis why he was beating Jeremy. Travis looked angry, doubled his fists, and began to stand up. He looked as though he was going to jump on Jeremy, so I jumped up and hit him in the face. I yelled at Jeremy and Kathleen to get out [of the mobile home] and they did.

After they left Travis attacked me and I defended myself with the roofing hammer. When he fell to the floor, I saw blood coming from his head. I left the mobile home, drove to a nearby store and bought two quarts of beer.

When I returned, Travis was dead. I put his body in the trunk of my car, drove to the country and dumped him. Later, I cut out the carpet and upholstery where the blood was located.

Defendant claims the trial court erroneously failed to give Instruction A, patterned after MAI–CR 3d 306.08, regarding the use of force in defense of third persons. Instruction A as submitted by Defendant is as follows:

One of the issues in this case is whether the use of force by the defendant against Travis R. McDowell was in defense of another person. In this state, the use of force including the use of deadly force to protect another person from harm is lawful in certain situations.

In order for a person lawfully to use force in defense of another person, such a defender must reasonably believe the person he is trying to protect is in imminent danger of harm from a third person. The person he is trying to protect need not be in actual danger but the defender must have a reasonable belief that the person is in such danger.

If the person trying to protect another person has such a belief, he is then permitted to use that amount of force which he reasonably believes to be necessary to protect the other person.

But a person acting in the defense of another person is not permitted to use deadly force, that is, force which he knows will create a substantial risk of causing death or serious physical injury, unless he reasonably believes the person he is trying to protect is in imminent danger of death or serious physical injury.

And even then, a person may use deadly force only if he reasonably believes the use of such force is necessary to protect the other person.

As used in this instruction, the term "reasonable belief" means a belief based on reasonable grounds, that is, grounds which could lead a reasonable person in the same situation to the same belief. This depends upon how the facts reasonably appeared. It does not depend upon whether the belief turned out to be true or false.

On the issue of the defense of another person in this case, you are instructed as follows:

If the defendant reasonably believed Jeremy Liday was in imminent danger of harm from the acts of Travis R. McDowell, and he reasonably believed that the use of deadly force was necessary to defend Jere-

my Liday, then he acted in lawful defense of another person.

The state has the burden of proving beyond a reasonable doubt that the defendant did not act in lawful defense of another person. Unless you find beyond a reasonable doubt that the defendant did not act in lawful defense of another person, you must find the defendant not guilty.

As used in this instruction, the term "serious physical injury" means physical injury that creates a substantial risk of death or that causes serious disfigurement or protracted loss or impairment of the function of any part of the body.

Evidence has been introduced of acts of violence not involving the defendant committed by Travis R. McDowell and that the defendant was aware of these acts. You may consider this evidence in determining whether the defendant reasonably believed Jeremy Liday was in imminent danger of harm from Travis R. McDowell. You may not consider this evidence in determining who was the initial aggressor in this encounter or for any other reason.

You, however, should consider all of the evidence in the case in determining whether the defendant acted in lawful defense of another person.

Although Instruction A was refused, the trial court did submit to the jury an instruction on self-defense. The jury verdict clearly rejected that defense.

Under § 563.031.1, "A person may, subject to the provisions of subsection 2, use physical force upon another person when and to the extent he reasonably believes such to be necessary to defend himself or a third person from what he reasonably believes to be the use or imminent use of unlawful force by such other person . . . ." Subsection 2 provides that a person may not use deadly force upon another person "unless he reasonably believes that such deadly force is necessary to protect himself or another against death, serious physical injury, rape, sodomy or kidnapping. . . ."

■ In defending another, deadly force may only be used when there is

(1) an absence of aggression or provocation on the part of the defender [or the one being defended], (2) a real or apparently real necessity for the defender to kill in order to save himself [or the person defended] from an immediate danger of serious bodily injury or death, (3) a reasonable cause for the defender's belief in such necessity, and (4) an attempt by the defender to do all within his power consistent with his personal safety to avoid the danger and need to take a life.

*State v. Dale,* 874 S.W.2d 446, 449 (Mo.App. 1994) (*citing State v. Taylor,* 770 S.W.2d 531, 533 (Mo.App.1989)). The actor may not use more force than he reasonably believes necessary to prevent harm to the defended person and the force may not exceed that which the defended person would be justified in using. *Dale* at 449.

■ Defendant contends the evidence entitled him to the refused instruction. A defendant is entitled to an instruction on any theory of his case which the evidence tends to establish. *State v. Jones,* 627 S.W.2d 322, 323 (Mo.App.1982). Furthermore, if supported by the evidence, a defendant is entitled to instructions both on self-defense and defense of another. *Id.* Defendant's testimony is the only evidence which could conceivably justify the submission of Instruction A.

■ However, Defendant offered no evidence that Jeremy was in imminent danger of death or serious physical injury from any of Travis's acts. Defendant's evidence, if believed, shows that while Jeremy was present in the mobile home Travis merely clenched his fists and "started" to stand up after being confronted by Defendant. Before Travis was able to stand up, Defendant hit him in the face which "knocked him back down onto the couch." At that point, Defendant ordered Jeremy and Kathleen to get out of the mobile home which they did. After Jeremy left, he was obviously not in imminent danger of death or serious physical injury from Travis. The deadly force used by Defendant occurred well after Jeremy's absence. No real or apparently real necessity existed for Defendant to kill in order to save Jeremy from harm. Clearly, Defendant

had no reasonable cause to believe his deadly act was necessary in order to protect Jeremy.

As the State points out, even if Defendant was defending Jeremy after Travis clenched his fists, Jeremy was threatened by an assault and battery at most. The possibility of an assault and battery on Jeremy does not justify the use of deadly force by Defendant. *State v. Morley*, 748 S.W.2d 66, 68 (Mo.App. 1988). This is true because § 563.031.2 prohibits the use of such force except when Defendant reasonably believes it is necessary to protect himself or another from death or serious physical injury. *Id.*

Defendant's evidence is insufficient as a matter of law to require the submission of Instruction A. No error results from a trial court's refusal to give an instruction lacking evidentiary support. This point is without merit.

### No. 20144

Defendant's only point in this appeal contends he was entitled to postconviction relief because his trial counsel was ineffective for failing to call Kathleen Liday because her "testimony would have been relevant and helpful to [Defendant's] defense of self-defense and defense of another." Defendant alleges there is a reasonable probability that he would have been acquitted had the jury heard Kathleen's testimony.

■ Our review is limited to determining whether the findings and conclusions of the motion court are clearly erroneous. Rule 29.15(j); *State v. Boyd*, 842 S.W.2d 899, 905 (Mo.App.1992). The findings and conclusions are clearly erroneous only if, after a review of the entire record, we are left with the definite and firm impression that a mistake was made. *Id.* A movant in a Rule 29.15 case bears the burden of proving ineffective assistance of counsel. *Id.* To demonstrate ineffectiveness in failing to call a witness to testify, a movant must establish that the attorney's failure to call a witness was something other than reasonable trial strategy. *Id.*

■ At the evidentiary hearing, Kathleen testified she was originally a co-defendant charged with the murder of Travis, but she later pled guilty to a lesser charge. Kathleen testified she had been willing to testify for Defendant. If offered at trial, her evidentiary hearing testimony would have confirmed most of Defendant's testimony concerning his claim of self-defense and defense of another.

Defendant's trial counsel also testified at the evidentiary hearing. He stated that Kathleen was not called as a witness because he (1) regarded her as a loose cannon, (2) opined that Kathleen engineered Travis's death and let Defendant "take the fall," and (3) was afraid of what Kathleen might say on the stand, regardless of what she said before.

■ The motion court found Defendant's trial counsel was effective and his decision not to call Kathleen was a matter of trial strategy. This finding is not clearly erroneous. The selection of witnesses and the introduction of evidence are questions of trial strategy. *Leisure v. State*, 828 S.W.2d 872, 875 (Mo. banc 1992). A decision not to call a witness to testify, as a matter of trial strategy, is virtually unchallengeable. *Id.*

Because of trial counsel's valid concerns over the reliability of Kathleen's testimony, it cannot be said that he was ineffective in deciding against calling her to testify.

The judgment of conviction in No. 19220 is affirmed. The order denying Defendant's Rule 29.15 motion in No. 20144 is affirmed.

GARRISON and BARNEY, JJ., concur.