**STATE of Missouri, Respondent,**

v.

**Ricky MADDIX, Appellant.**

**Nos. WD 49034, WD 51169.**

Missouri Court of Appeals,
Western District.

Oct. 15, 1996.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Nov. 26, 1996.

Application to Transfer Denied
Jan. 21, 1997.

Jim C. Cox, Asst. Appellate Defender, Kansas City, for appellant.

Philip M. Koppe, Asst. Atty. Gen., Kansas City, for respondent.

SPINDEN, Judge.

A jury convicted Ricky Maddix of assault in the first degree and armed criminal action for shooting David Pittman. On appeal, Maddix charges the circuit court with four errors: (1) not instructing the jury on second degree assault; (2) not declaring a mistrial during closing argument; (3) sentencing him as a prior, persistent and class X offender; and (4) denying his Rule 29.15 motion for post-conviction relief. We affirm but remand with instructions.

On June 20, 1992, while David Pittman attended a gathering at the house of Stella Hayes, Maddix's mother-in-law, Maddix walked up to Pittman, who was unarmed, and shot him twice in the head. Maddix ordered Pittman to give him all his money. After Pittman gave him some change, Maddix ordered him to leave. Pittman stumbled to his car and drove to a nearby store to call the police and an ambulance.

Keith Wright, a Slater police officer, responded to the call. Wright found Pittman sitting by the telephone, suffering from bullet wounds to his head and neck. Pittman told the officer that "Ricky Maddix" had shot him with a stainless steel .25 caliber pistol "over on Black Stone at Stella Hayes' residence."

After other officers arrived, Wright, who knew Maddix, drove toward Hayes' house and saw Maddix driving his pickup. Wright stopped the truck, advised Maddix of his constitutional rights and arrested him. Maddix consented to Wright's searching his pickup. Wright found a stainless steel .25 caliber pistol under the pickup's passenger seat. Officers later confirmed that this was the gun used to shoot Pittman.

As a result of the shooting, Pittman suffered two bullet wounds to the head, a broken jaw bone and a punctured ear canal.

One bullet was removed from his ear, but another bullet remained lodged in his head at the time of the trial. The shooting left Pittman paralyzed on the left side of his face and deaf in his right ear.

At trial, Maddix admitted shooting Pittman but insisted that he shot in self-defense. The jury found him guilty of assault in the first degree and armed criminal action. He was sentenced to two consecutive prison terms of 30 years. Maddix filed a notice of appeal and a *pro se* motion for post-conviction relief pursuant to Rule 29.15. The circuit court denied his motion for post-conviction relief after an evidentiary hearing. These appeals have been consolidated.

■ In his first point, Maddix complains that the circuit court erred in rejecting his proposed instruction on second degree assault. He claims the circuit court should have permitted the jury to consider the lesser included offense because he presented evidence of sudden passion arising out of adequate cause. We disagree. We find no evidence indicating or suggesting that Maddix was under the influence of rage, anger or terror so extreme that he lost his capacity for self-control.

Maddix said that he and Pittman had argued the night before the shooting. On the day of the shooting, Maddix testified, Pittman was holding a silver object when Maddix arrived at Hayes' house, and Maddix thought it was a gun. He said that Pittman yelled insults at him. Maddix said that he became upset, hurt and scared, so he went back to his pickup and got a gun. He then began walking toward Pittman. When Pittman raised his arm, he said, he shot Pittman. After Pittman fell to the ground, Maddix shot him in the head again. He acknowledged ordering Pittman to give him all his money. Maddix said he shot Pittman because he thought Pittman was going to shoot him or "do something to [him]."

The circuit court instructed the jury on self-defense. It refused to submit an instruction on second degree assault. We concur.

Section 565.060.1(1)[1] defines second degree assault as "[a]ttemp[ting] to kill or knowingly caus[ing] or attempt[ing] to cause serious physical injury to another person under the influence of sudden passion arising out of adequate cause[.]" Section 565.002(7) defines "sudden passion" as "passion directly caused by and arising out of provocation by the victim ... which passion arises at the time of the offense and is not solely the result of former provocation[.]" Section 565.002(1) defines "adequate cause" as "cause that would reasonably produce a degree of passion in a person of ordinary temperament sufficient to substantially impair an ordinary person's capacity for self-control[.]"

■ This court's Eastern District has said, "[F]or an offense to be reduced to one less culpable, there must be a sudden, unexpected encounter or provocation tending to excite the passion beyond control. Passion may be rage or anger, or terror, but it must be so extreme that for the moment, the action is being directed by passion, not reason." *State v. Simmons*, 751 S.W.2d 85, 91 (Mo. App.1988).

Assuming Maddix's testimony to be true, Maddix perceived a danger (Pittman's carrying a gun) and responded by walking back to his pickup, arming himself with a pistol, and walking toward Pittman to confront him. This belies notions that his actions were directed by passion rather than reason.

■ In his second point, Maddix complains that the circuit court did not declare a mistrial, *sua sponte*, because of remarks made during the prosecutor's closing argument. The prosecutor said, "Provocation, [Maddix] kept coming to provocation, whatever. You'll see no instruction on it because it didn't merit it. There is *no instruction* on it. It's not a consideration."

Maddix did not object. He did not preserve the issue for our review. He asks us to review it as "plain error" under Rule 30.20. We decline.

1. All statutory references refer to the Missouri Revised Statutes 1994, unless otherwise indicated.

The Supreme Court of Missouri has instructed that relief should be granted on an assertion of plain error as to matters contained in closing argument only under extraordinary circumstances. *State v. Silvey,* 894 S.W.2d 662, 670 (Mo. banc 1995). In *State v. Clemmons,* 753 S.W.2d 901, 907–08 (Mo. banc), *cert. denied,* 488 U.S. 948, 109 S.Ct. 380, 102 L.Ed.2d 369 (1988), the Supreme Court said, "A court should rarely grant relief on assertions of plain error as to closing argument[.] This is because, in the absence of objection and request for relief, the trial court's options are narrowed to uninvited interference with summation and a corresponding increase of error by such intervention." In *State v. Clifford,* 815 S.W.2d 3, 8 (Mo.App.1991), this court also said, "Errors committed during closing argument do not justify relief under the plain error standard unless they are determined to have had a decisive effect on the jury." We do not discern such circumstances in this case.

Maddix also argues that the circuit court committed plain error by entering an order which indicated that Maddix was being sentenced as a prior, persistent and class X offender when there was no mention of an enhanced sentence in the court's oral pronouncement of sentence. In support of his argument, Maddix relies on two Eastern District cases, *McCaine v. State,* 891 S.W.2d 419 (Mo.App.1994), and *State v. Johnson,* 861 S.W.2d 807 (Mo.App.1993). Both cases are distinguishable.

In *McCaine,* the trial court found the defendant to be a class X offender but made no mention of this during the formal pronouncement of sentence. The written sentence indicated that the defendant was sentenced as a class X offender. In finding that this constituted a material discrepancy in the sentence, this court's Eastern District remanded the case with directions for the trial court to "correct" its sentence and judgment to conform to its oral pronouncement of sentence which did not include the class X offender status.

Similarly, in *Johnson,* the trial court found the defendant to be a repeat offender but failed to mention this during the oral pronouncement of sentence. On appeal, the defendant argued that the trial court erred because the written sentence indicated that he was a repeat offender and that he was being sentenced to 15 years in prison "without probation or parole." During the oral pronouncement of sentence, the trial court had not mentioned the defendant's repeat offender status and made no qualifications that his sentence be served without probation or parole. The *Johnson* court found that the trial court's oral pronouncement controlled and ordered that any reference in the judgment to "without probation or parole" be stricken.

In *Jones v. State,* 910 S.W.2d 300 (Mo.App. 1995), this court's Eastern District considered a similar discrepancy between the trial court's oral pronouncement of sentence and the written sentence and judgment. Instead of reversing the decision and directing the trial court to "correct" its written sentence to conform to its oral pronouncement of sentence, as in *McCaine,* the *Jones* court ordered resentencing in accord with the plea agreement and the testimony offered at the guilty plea hearing which reflected that the defendant was a persistent offender. *Id.* at 303.

In this case, the state alleged in its amended information that Maddix was a prior, persistent and class X offender. The state presented evidence to support these allegations at a hearing held outside the presence of the jury. At the conclusion of the hearing, the circuit court found that Maddix was a prior, persistent and class X offender. After Maddix's conviction, the circuit court sentenced him to two consecutive 30–year prison terms. Immediately before pronouncing the sentence, the court said, "As a class X offender, whatever sentence I impose[,] the statute says you have to serve at least 80 percent of it[.]"

This was sufficient to inform Maddix, who was present at the sentencing hearing, that he was being sentenced as a repeat offender. Section 558.019.4(3), RSMo 1991,[2] defines a

2. This was the version of the statute that was in effect at the time Maddix committed the offenses for which he was convicted in the present case.

class X offender as "one who has previously pleaded guilty to or has been found guilty of three felonies committed at different times[.]" Section 558.019.2(3) says, "If the defendant is a class X offender, the minimum prison term which the defendant *must serve* shall be eighty percent of his sentence."[3] Once the circuit court finds a defendant to be a prior, persistent[4] and class X offender, the defendant falls within this provision.

In this case, the circuit court found Maddix to be a prior, persistent and class X offender. At the time of sentencing, the court properly informed Maddix that as a class X offender, he would be required to serve at least 80 percent of the sentence imposed.

Nonetheless, we agree with the state's assertion that when a defendant has been properly charged and proven to be a repeat offender and the sentencing court has made findings to that effect, the court's failure to repeat this at the oral pronouncement of sentence should not negate the effect of the sentencing enhancement provisions.

The appropriate remedy should, at most, be resentencing.[5] Sentencing is not "a game in which a wrong move by the judge means immunity for the prisoner." *Reed v. State,* 778 S.W.2d 313, 321 (Mo.App.1989) (citing *Jones v. Thomas,* 491 U.S. 376, 109 S.Ct. 2522, 105 L.Ed.2d 322 (1989)). We decline to follow the decisions of this court's Eastern and Southern districts[6] which have held otherwise.

In his remaining points, Maddix complains that the circuit court erred in denying his Rule 29.15 motion for post-conviction relief which charged his trial counsel with ineffective representation. He claims his attorney was ineffective for (1) relying on a trial theme that race caused the underlying criminal case; (2) failing to interview a witness;

(3) failing to seek the court's suppression of the gun found in Maddix's pickup; and (4) not introducing Pittman's rifle into evidence.

■ To establish that his trial attorney was ineffective, Maddix was obligated to show that his attorney's performance was so deficient that it constituted a lack of representation and that it prejudiced his defense. *State v. Harris,* 870 S.W.2d 798, 814 (Mo. banc 1994). "The benchmark for judging ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result." *State v. Graham,* 906 S.W.2d 771, 784 (Mo.App.1995).

■ Reasonable trial strategy will not support a claim of ineffective assistance of counsel. *Harris,* 870 S.W.2d at 814. Counsel is allowed wide latitude in defending a client and should use his or her best judgment in matters of trial strategy. *State v. Williamson,* 877 S.W.2d 258, 262 (Mo.App. 1994). "[C]ourts reviewing such claims should refrain from employing hindsight when reviewing counsel's conduct at trial." *Id.* Even if reasonable trial strategy is unsuccessful, counsel cannot be deemed ineffective. *State v. Dees,* 916 S.W.2d 287, 301 (Mo.App.1995); *State v. Anthony,* 881 S.W.2d 658, 661 (Mo.App.1994).

■ Although Maddix claims that his attorney's "trial theme" was that race caused the criminal acts, the record indicates that an underlying defense theme throughout the case was that Pittman was looking for trouble and should not have been at the gathering and that Maddix had a right to defend himself and his family. In presenting this defense, trial counsel referred to Pittman's being the only white person at the gathering, that he had been associating with Maddix's

---

3. We added the emphasis.

4. Section 558.016 defines "prior offender" as "one who has pleaded guilty to or has been found guilty of one felony." The statute defines "persistent offender" as "one who has pleaded guilty to or has been found guilty of two or more felonies committed at different times."

5. We note, as the state points out, that § 558.019 no longer employs the terms "prior offender,"

"persistent offender" or "class X offender," and the responsibility for determining parole eligibility of repeat offenders has been transferred from the courts to the Department of Corrections.

6. The Southern District case of *Howard Johnson v. State,* No. 20298, slip. op. at 6, —— S.W.2d ——, —— (Mo.App. April 5, 1996), followed the *McCaine* ruling.

wife and had directed racial slurs at Maddix. The circuit court found the defense to be a matter of reasonable trial strategy. We concur.

Maddix also claims that his attorney was ineffective for not calling Greg Davis as a witness at trial. The selection of witnesses for trial is a matter of trial strategy, too. *State v. Pounders,* 913 S.W.2d 904, 908 (Mo. App.1996). A decision not to call a witness is, as a matter of trial strategy, virtually unchallengeable. *Id.*

To establish that trial counsel was ineffective for not calling a witness, Maddix was obligated to show that his counsel's not calling the witness involved something other than reasonable trial strategy; that the witness could have been located through reasonable investigation; that the witness would have testified; and that the witness' testimony would have provided the defendant with a viable defense. *Williamson,* 877 S.W.2d at 262.

Maddix did not show that Davis would have testified at trial or that his testimony would have provided a viable defense. Maddix claimed that Davis would have said that Maddix and Pittman argued the day before the shooting and that Pittman threatened him with a rifle. This was also asserted in an affidavit signed by Davis which was presented at the post-conviction hearing. Even if this testimony had been presented, it would not have provided Maddix with a viable defense. The jury heard other testimony regarding these assertions and Davis' testimony would have been cumulative.

Maddix also claims his attorney was ineffective for not filing a motion to suppress the pistol found in his truck after his arrest. Again, whether to file a motion to suppress is a matter of trial strategy, *State v. Neal,* 849 S.W.2d 250, 258 (Mo.App.1993), and counsel will not be deemed ineffective for failing to file a meritless motion to suppress. *State v. Hunter,* 840 S.W.2d 850, 870 (Mo. banc 1992); *Neal,* 849 S.W.2d at 258.

Wright testified that Maddix consented to the search of his pickup. The pistol found in his pickup proved to be the gun used to shoot Pittman. Maddix did not show that the trial court would have had a sound basis for suppressing the gun. At the post-conviction hearing, Maddix's trial attorney said that he did not move to suppress the gun because it did not affect his trial strategy. Maddix also did not demonstrate that the trial's outcome would have been different had the gun not been allowed into evidence. The state presented overwhelming evidence of his guilt, including Maddix's own admission that he committed the shooting. His defense was not that he did not shoot Pittman, but that he shot him in self-defense. Because Maddix admitted shooting Pittman, suppression of the gun would have accomplished little.

Finally, Maddix claims that his attorney was ineffective for not locating and producing the rifle that Pittman had in his vehicle at the time of the shooting. At trial, Pittman admitted that at the time of the incident he owned a .22 caliber rifle which he kept in his vehicle. At the post-conviction hearing, Maddix's trial attorney indicated that he had attempted to find the rifle and that he learned it had been sold. The record also indicates that a *subpoena duces tecum* was issued to Pittman, but counsel was unable to find the rifle.

To prevail on a claim that counsel was ineffective for not investigating evidence, the defendant must show: (1) the specific information sought; (2) that a reasonable investigation would have uncovered the information; and (3) that the information, once discovered, would have provided a viable defense. *State v. Harris,* 868 S.W.2d 203, 209 (Mo.App. 1994). The circuit court had a sound basis for finding that Maddix's trial attorney made reasonable efforts to investigate the rifle's whereabouts but was unable to find and to produce it at trial. In any event, Maddix did not show that he was prejudiced by its absence at trial. The jury heard testimony that Pittman had a rifle and that it was in his vehicle at the time of the shooting; putting the rifle in evidence would have been merely cumulative.

For the foregoing reasons, we conclude that the circuit court did not clearly err in denying Maddix's motion for post-conviction

relief. We affirm the circuit court's judgment and denial of post-conviction relief. The circuit court's written judgment erroneously stated that Maddix was found to be a "dangerous offender." He was neither charged as a dangerous offender nor did the circuit court make findings to this effect. We, therefore, remand the case to the circuit court with directions that it enter an order *nunc pro tunc* pursuant to Rule 29.12 to remove any reference to Maddix's being a "dangerous offender."

LOWENSTEIN, P.J., and SMART, J., concur.